**NOTICE:  SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
SEPTEMBER 17, 2020

CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
SEPTEMBER 17, 2020

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of | ) | No. 97452-7 |
| | ) | |
| DON WESLEY WINTON, | ) | En Banc |
| | ) | |
| Petitioner. | ) | |
| | ) | Filed: September 17, 2020 |

JOHNSON, J.—This case involves the discretion of the Indeterminate Sentence Review Board (ISRB), under chapter 9.94A RCW and chapter 9.95 RCW, to restrict a parolee's ability to travel while serving community custody. The State seeks reversal of an unpublished Court of Appeals decision granting Don Wesley Winton's personal restraint petition (PRP) and striking a geographic community custody condition imposed pursuant to RCW 9.95.420(2) that restricted his travel into Clark County without prior approval. The Court of Appeals analyzed the condition as implicating a fundamental constitutional right to travel, applied strict scrutiny, found the condition was not narrowly tailored, and vacated the condition. We reject the Court of Appeals' analytical lens on the

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Winton*, No. 97452-7

grounds that a parolee remains under state custody and their constitutional right to travel is curtailed and can be restricted under the statute. We reverse the Court of Appeals and dismiss the PRP.

FACTS AND PROCEDURAL HISTORY

In 2007, Winton pleaded guilty in Clark County Superior Court to two counts of first degree child molestation and one count of third degree child molestation. The sentencing court imposed an indeterminate sentence of 98 months to life on one of the counts of first degree child molestation. The sentencing court also imposed no contact orders with respect to the two victims, one permanent and one for five years. The victims live in Clark County.

In September 2014, the ISRB granted Winton's conditional release. The initial conditions of release included geographic restrictions prohibiting Winton from traveling to Seattle, Clark County, or Clallam County without prior written approval from his community corrections officer and the ISRB. In October 2014, the ISRB added an additional condition prohibiting travel to Skamania County and the portion of Oregon north of Highway 20 without prior permission. In 2016, the ISRB added Arch Cape, Oregon to the list of prohibited locations. In May 2018, Winton filed this personal restraint petition seeking the removal of the geographical conditions of his community custody. In July 2018, the ISRB removed all geographic restrictions except the condition that he not enter Clark

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Winton*, No. 97452-7

County without prior written approval; the victims still lived in Clark County and Winton had requested and received permission to travel through the county in the past. Winton asserts that he periodically travels to visit with his biological daughter in Oregon and asserts that the Clark County restriction is burdensome because it prohibits traveling to Oregon using Interstate 5 without first obtaining permission.[1]

Winton filed this challenge as a PRP in the Court of Appeals. The Court of Appeals granted Winton's PRP, analyzing the restriction as impacting Winton's constitutional right to travel, applying strict scrutiny to the ISRB's travel condition, and finding that it was not narrowly tailored.[2]

## ANALYSIS

We review questions of law in PRPs de novo. *In re Pers. Restraint of Coats*, 173 Wn.2d 123, 133, 267 P.3d 324 (2011). Community custody conditions are reviewed for an abuse of discretion, but we review whether an entity had authority to impose such restrictions de novo. *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007). The State's primary concern and argument centers on the standard of review applied by the Court of Appeals.

---

[1] The ISRB narrowed the Clark County travel restriction in December 2018, allowing Winton to travel through Clark County, requiring permission only if Winton desires Clark County to be his final destination.

[2] The Washington Association of Criminal Defense Attorneys [Lawyers] filed an amicus curiae brief in this case.

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

While the right to travel is recognized as a fundamental right of citizenship, this right is affected by a criminal conviction. *See Bagley v. Harvey*, 718 F.2d 921, 924 (9th Cir. 1983); *see also Jones v. Helms*, 452 U.S. 412, 420, 101 S. Ct. 2434, 69 L. Ed. 2d 118 (1981) ("[A]ppellee's own misconduct had qualified his right to travel interstate before he sought to exercise that right."). *Bagley* addressed whether a parole commission's decision to parole Bagley to Iowa violated his right to travel. After noting that other courts have found that parolees have a right to travel, the *Bagley* court reached the opposite conclusion and upheld the travel condition, reasoning that

> [t]here can be no doubt that Bagley's constitutional right to interstate travel was extinguished upon his valid convictions and imprisonment. Since, to this date, Bagley has never regained that freedom of travel he lost upon conviction, he may not invoke the due process clause of the fifth amendment to compel the Government to grant him the desired right.

718 F.2d at 924 (internal citation omitted).

We find the analysis in *Bagley* to be persuasive and applicable here. Following a conviction and during the period of imprisonment, the limitation on the right to travel is similar to the loss of other constitutional rights.[3] This reasoning applies to individuals serving community custody. Community custody is an extension of incarceration where an individual's "'constitutional rights . . . are

---

[3] We do not reach the question of whether the right to travel is restored to individuals who fully complete their sentences.

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Winton*, No. 97452-7

subject to the infringements authorized by the SRA [Sentencing Reform Act of 1981], RCW 9.94A.'" *State v. Ross*, 129 Wn.2d 279, 287, 916 P.2d 405 (1996) (second alteration in original) (quoting *In re Pers. Restraint of Caudle*, 71 Wn. App. 679, 683, 863 P.2d 570 (1993) (Sweeney, J., concurring)). Because an individual who is transferred from total confinement to community custody remains under the continuing jurisdiction of the ISRB, the right to travel is not entirely restored. To the extent that the Court of Appeals cases have held that a parolee under community custody possesses an unrestricted constitutional right to travel and have held that strict scrutiny applies when reviewing such conditions, we reject that analysis and level of scrutiny. *See In re Pers. Restraint of Martinez*, 2 Wn. App. 2d 904, 913, 413 P.3d 1043 (2018); *State v. Sims*, 152 Wn. App. 526, 531, 216 P.3d 470 (2009), *aff'd on other grounds*, 171 Wn.2d 436, 256 P.3d 285 (2011). We decline to adopt the factored analysis from *State v. Schimelpfenig*, 128 Wn. App. 224, 229, 115 P.3d 338 (2005), to the analysis of a community custody condition, as the *Schimelpfenig* factors are premised on a constitutional strict scrutiny standard of review.[4]

---

[4] We acknowledge, however, that some of the *Schimelpfenig* factors align with the considerations the ISRB must undertake in imposing conditions of community custody under RCW 9.94A.704(10)(c). *Schimelpfenig* sets out nonexclusive factors for courts to consider under the strict scrutiny standard of review: "(1) whether the restriction is related to protecting the safety of the victim or witness of the underlying offense; (2) whether the restriction is punitive and unrelated to rehabilitation; (3) whether the restriction is unduly severe and restrictive

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Winton*, No. 97452-7

Instead, we derive guidance from the statutory authority defining the ISRB's discretion to impose community custody conditions. The ISRB is authorized to "exercise independent judgment" regarding decisions concerning "offenders' release, revocation, reinstatement, or the imposition of conditions of supervision." RCW 9.95.0002(8). When imposing community custody conditions, the ISRB must comply with the statutory definition of "community custody" under RCW 9.94A.704:

> "Community custody" means that portion of an offender's sentence subject to controls including *crime-related prohibitions* and affirmative conditions from the court, the board, or the department of corrections based on risk to community safety, that is served under supervision in the community, and which may be modified or revoked for violations of release conditions.

RCW 9.95.0001(2) (emphasis added).[5] "Crime-related prohibition" is defined as "an order of a court prohibiting conduct that *directly relates* to the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10) (emphasis added); *see* RCW 9.95.0001(3). Moreover, an imposed condition must be reasonably related to the crime of the conviction, the offender's risk of

---

because the defendant resides or is employed in the area from which he is banished; (4) whether the defendant may petition the court to temporarily lift the restriction if necessary; and (5) whether less restrictive means are available to satisfy the State's compelling interest." 128 Wn. App. at 229.

[5] Based on the language, "including crime-related prohibitions and affirmative conditions," we recognize that RCW 9.95.0001(2) establishes nonexclusive considerations. However, in this case, our focus is on "crime-related prohibitions," and those additional considerations are not before us.

*In re Pers. Restraint of Winton*, No. 97452-7

reoffending, and the safety of the community or it will be removed. RCW 9.94A.704(10)(c)(i)-(iii). Taken together, any community custody condition imposed by the ISRB, even those that implicate constitutional freedoms, must bear a reasonable relation to the circumstances of the crime, the offender's risk of reoffense, and public safety.

Based on the statutory sentencing authority, we have evaluated sentencing conditions for their reasonableness. In *State v. Riley*, we reviewed a sentencing condition that infringed on the defendant's freedom of association because it prevented him from associating with other computer hackers. 121 Wn.2d 22, 36-38, 846 P.2d 1365 (1993). We reasoned that because "crime-related" prohibitions serve a primarily punitive purpose and are left to the discretion of the sentencing authority, the sentence will be reversed only if it is manifestly unreasonable. Our analysis instead recognized that "[l]imitations upon fundamental rights are permissible" for the duration of the offender's sentence where restrictions are "imposed sensitively. . . . [and are] 'reasonably necessary to accomplish the essential needs of the state and public order.'" *Riley*, 121 Wn.2d at 37-38 (quoting *Malone v. United States*, 502 F.2d 554, 556 (9th Cir. 1974)). In that case, the condition was not unconstitutional; it was reasonably related to the defendant's crime of computer trespass and was imposed to prevent the defendant from reoffending.

7

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Winton*, No. 97452-7

While sentencing conditions are distinguishable in some aspects, we later undertook a similar analysis in the context of community custody conditions. *State v. Bahl*, 164 Wn.2d 739, 753, 193 P.3d 678 (2008). In reviewing a vagueness challenge to a community custody condition, we recognized that the imposition of "conditions of community custody is within the discretion of the sentencing court and will be reversed if manifestly unreasonable." *Bahl*, 164 Wn.2d at 753 (citing *Riley*, 121 Wn.2d at 37). Further, the imposition of an unconstitutional condition would be manifestly unreasonable. Recognizing this rule in *State v. Hai Minh Nguyen*, 191 Wn.2d 671, 678, 425 P.3d 847 (2018), we assessed whether a condition imposed by the sentencing court was crime related. We held that community custody conditions are reviewed for an abuse of discretion and that a court does not abuse its discretion if a reasonable relationship exists between the crime and the condition. *Nguyen*, 191 Wn.2d at 678, 683-84.

While these cases analyzed community custody conditions imposed by the sentencing court, the same reasoning applies here to community custody conditions imposed by the ISRB. Both authorities possess broad discretion to impose crime-related community conditions. RCW 9.94A.703(3)(f); RCW 9.95.0001(2); RCW 9.95.0002(8). Accordingly, we review whether the ISRB abused its discretion in imposing a particular community custody condition. *See Nguyen*, 191 Wn.2d at 683. Given that parolees under community custody are still serving their sentences,

8

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Winton*, No. 97452-7

conditions may implicate a parolee's diminished constitutional rights. Based on the statutory authority, the relevant inquiry is whether the imposed condition is "crime-related," meaning it is reasonably related to the crime, the offender's risk of reoffense, and the protection of public safety. RCW 9.94A.704(10)(c)(i)-(iii); *see* RCW 9.95.0001(2). If the condition fails to meet these statutory requirements, it is manifestly unreasonable and should be removed.

Turning to the condition imposed in this case, we hold that it was reasonable to require Winton to obtain written approval before entering Clark County. Contrary to Winton's characterization of this condition as akin to a banishment order, even if Winton possessed an unrestricted constitutional right to travel, this condition would not infringe on that right. Winton does not reside or work in Clark County. He expresses a need to travel through the area via the interstate highway to visit his daughter in Oregon, but he does not demonstrate any need to otherwise stop or engage in activity within Clark County.

The condition does not ban Winton from Clark County. The record does not indicate that Winton was ever denied approval to travel through Clark County or that Winton ever violated the condition and was punished. Nor does Winton complain of any alleged prohibitions on his ability to enter the county. Rather, the condition requires preapproval from the ISRB and community corrections officer to justifiably notify the victims when Winton anticipates entering the area.

9

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Winton*, No. 97452-7

The condition complies with the statutory requirements, that is, it bears a reasonable relation to the crime, the risk of reoffense, and public safety. The condition directly relates to the crime because Winton's victims reside, work, and attend school within Clark County. It also reasonably reduces the risk of reoffense, ensures public safety, and notably, protects the victims and their families by preventing contact with Winton. The ISRB properly exercised its discretion in imposing this condition.

## CONCLUSION

We reject the Court of Appeals' holding that strict scrutiny applies to parole conditions and its conclusion that persons serving community custody possess an unqualified constitutional right to travel. An individual's right to travel is limited by a criminal conviction during the period of imprisonment and release on community custody does not alter this limitation. Where a community custody condition is imposed by the ISRB, it must be reasonably related to the crime, recidivism, and public safety. The ISRB has broad discretion in individual cases to craft appropriate conditions. We hold that the condition requiring Winton to obtain preapproval before entering Clark County was a reasonable exercise of authority. We reverse the Court of Appeals and dismiss the PRP.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

WE CONCUR:

Stephens, C.J.

Madsen, J.                    Yu, J.

Owens, J.                    Montoya-Lewis, J

González, J.                    Whitener J.

*In re Pers. Restraint of Winton*, No. 97452-7
(Gordon McCloud, J., concurring)

No. 97452-7

GORDON McCLOUD, J. (concurring)—The majority holds that Don

Wesley Winton, who has been conditionally released from prison, has lost his

fundamental, constitutional right to travel for the length of his sentence. Because

Winton's community custody sentence lasts the rest of his life, the majority's

holding means that Winton has lost that fundamental, constitutional right for the

rest of his life. I certainly agree that while he is serving community custody, the

Indeterminate Sentence Review Board (ISRB) may restrict Winton's right to

travel. And I agree that the narrow restriction now imposed on Winton (that he

must get permission to enter Clark County if that county is his final destination) is

permissible, both statutorily and constitutionally.

But I disagree with the majority's conclusion that Winton has lost all

constitutional protections for the rest of his life and that only the statutory scheme

protects him from ISRB overreach. I therefore respectfully concur.

Originally, upon his conditional release from prison, the ISRB barred

Winton from entering Seattle, Clark County, and Clallam County, without written

1

*In re Pers. Restraint of Winton*, No. 97452-7
(Gordon McCloud, J., concurring)

approval, for the rest of his life. Personal Restraint Pet. Ex. D at 1-2, *In re Pers. Restraint of Winton*, No. 52371-0-II (Wash. Ct. App. 2018). Later, the ISRB added Skamania County and "the state of Oregon north of Highway 20" to the list of places from which Winton was barred. *Id.* Ex. I. Highway 20 splits Oregon roughly in half, meaning that the ISRB effectively banned Winton from the entire northern half of the state. *Id.* Ex. K. Winton claimed that these restrictions unconstitutionally burdened his fundamental right to travel.

We recognize a fundamental right to travel. *See State v. Lee*, 135 Wn.2d 369, 389, 957 P.2d 471 (1998) ("The freedom to travel throughout the United States has long been recognized as a basic right under the United States Constitution." (citing *Dunn v. Blumstein*, 405 U.S. 330, 92 S. Ct. 995, 31 L. Ed. 2d 274 (1972))); *see also Eggert v. City of Seattle*, 81 Wn.2d 840, 841-44, 505 P.2d 801 (1973) (discussing the origins of the right). In fact, we recognize that a convicted criminal retains that right: "A defendant's fundamental rights limit the sentencing court's ability to impose sentencing conditions." *In re Pers. Restraint of Rainey*, 168 Wn.2d 367, 377, 229 P.3d 686 (2010).

And until today, we had held that "[t]he extent to which a sentencing condition affects a constitutional right is a *legal question subject to strict scrutiny*." *Id.* at 374 (emphasis added) (citing *State v. Warren*, 165 Wn.2d 17, 34, 195 P.3d

2

*In re Pers. Restraint of Winton*, No. 97452-7
(Gordon McCloud, J., concurring)

940 (2008)). In this context, we have described two different strict-scrutiny

standards of review. We have said that "'[c]onditions that interfere with

fundamental rights' must be 'sensitively imposed' so that they are 'reasonably

necessary to accomplish the essential needs of the State and public order.'" *Id.* at

377 (alteration in original) (quoting *Warren*, 165 Wn.2d at 32). We have also said

that "crime-related prohibitions affecting fundamental rights must be narrowly

drawn" so that there is "no reasonable alternative way to achieve the State's

interest." *Warren*, 165 Wn.2d at 34-35 (citing *State v. Riley*, 121 Wn.2d 22, 37-38,

846 P.2d 1365 (1993); *State v. Ancira*, 107 Wn. App. 650, 655, 27 P.3d 1246

(2001)). Either way, we have always subjected these conditions to exacting

constitutional review.

Our Courts of Appeals have appropriately followed our precedent and

strictly scrutinized sentencing conditions that affect a defendant's right to travel.

*In re Pers. Restraint of Martinez*, 2 Wn. App. 2d 904, 913-14, 413 P.3d 1043

(2018); *State v. Sims*, 152 Wn. App. 526, 531, 216 P.3d 470 (2009), *aff'd on other*

*grounds*, 171 Wn.2d 436, 256 P.3d 285 (2011); *State v. Alphonse*, 147 Wn. App.

891, 909, 197 P.3d 1211 (2008); *State v. Schimelpfenig*, 128 Wn. App. 224, 226,

115 P.3d 338 (2005).

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Winton*, No. 97452-7
(Gordon McCloud, J., concurring)

Despite all this precedent, the majority relies on an out-of-jurisdiction case to hold that people on community custody have no constitutional right to travel at all. Majority at 4 (quoting *Bagley v. Harvey*, 718 F.2d 921, 924 (9th Cir. 1983)). The majority reasons that "[f]ollowing a conviction and during the period of imprisonment, the limitation on the right to travel is similar to the loss of other constitutional rights." *Id.* It continues that this "reasoning applies to individuals serving community custody." *Id.* I hope the majority does not mean what it says. Until now, a conviction has not meant a loss of constitutional rights. *See, e.g.*, *State v. Olsen*, 189 Wn.2d 118, 126, 399 P.3d 1141 (2017) (holding that "even though probationers do not enjoy the same expectation of privacy as other citizens," they still have "reduced privacy interests under [Wash. Const.] article I, section 7"). Even if the majority means something other than what it says and intends to strip only those on community custody of their fundamental right to travel (rather than strip all convicted people of all their constitutional rights), it would still be overruling all our precedent subjecting sentencing conditions that affect fundamental rights to strict scrutiny. *Rainey*, 168 Wn.2d at 374; *Warren*, 165 Wn.2d at 34-35.

It is certainly possible that citywide, countywide, and other travel restrictions could survive strict scrutiny. As the *Schimelpfenig* court recognized,

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Winton*, No. 97452-7
(Gordon McCloud, J., concurring)

"the propriety of such restrictions must turn on the facts of each case." 128 Wn.

App. at 230; *see also id.* at 229 (listing five nonexclusive factors to consider).

Although this standard of review is demanding,

> the state has far more latitude in determining what would qualify as legitimate [government] objectives when dealing with a convicted criminal than it would if it sought to apply a restrictive condition in another setting. A less rigorous standard of review displays an insufficient level of respect for the continuing constitutional rights of offenders. Any hope that an offender might be rehabilitated or have some respect for the criminal justice system in the future would seem to follow more naturally from the imposition of a sentence that respects the rights and dignity of the offender than from the imposition of a sentence that shows a disregard for those vital issues.

Andrew Horwitz, *Coercion, Pop-Psychology, and Judicial Moralizing: Some*

*Proposals for Curbing Judicial Abuse of Probation Conditions*, 57 WASH. & LEE

L. REV. 75, 158 (2000). In other words, the State certainly has legitimate interests

in the safety of victims, the safety of the general public, and the rehabilitation of

offenders that could justify limitation or even deprivation of certain constitutional

rights (for example, the right to possess arms or the right to associate with certain

people).

The majority, however, goes even further than simply adopting a less-

onerous standard of review: it strips Winton of his constitutional right to travel

altogether. And since Winton will serve community custody for the rest of his life,

he will never regain that constitutional right.

5

*In re Pers. Restraint of Winton*, No. 97452-7
(Gordon McCloud, J., concurring)

As the majority lays out in detail, Winton is protected to some extent by the statutory scheme. I certainly agree with the majority's observation that "any community custody condition imposed by the ISRB, even those that implicate constitutional freedoms, must bear a reasonable relation to the circumstances of the crime, the offender's risk of reoffense, and public safety." Majority at 7. This will go a long way toward ensuring that most conditions are "'reasonably necessary to accomplish the essential needs of the State and public order,'" *Rainey*, 168 Wn.2d at 377 (quoting *Warren*, 165 Wn.2d at 32), if not "narrowly drawn" so that there is "no reasonable alternative way to achieve the State's interest," *Warren*, 165 Wn.2d at 34-35 (citing *Riley*, 121 Wn.2d at 37-38; *Ancira*, 107 Wn. App. at 655). But by relying on the statutory scheme, while eliminating Winton's constitutional rights, the majority is able to avoid the exacting constitutional standard of review and instead employ the abuse-of-discretion standard. *See* majority at 8. In all this, those conditionally released from prison, those who hope to move on from their convictions and restart their lives, lose.

Apparently recognizing the questionable constitutionality of banning Winton from Washington's largest city, three counties, and half the state of Oregon, the ISRB, over the course of this litigation, has significantly narrowed its conditions. Now, the ISRB bars Winton only from entering Clark County without approval,

6

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

and then only if Clark County is Winton's final destination. Majority at 2-3 & n.1.

For many of the same reasons that the majority holds that this current condition is statutorily permissible, see *id.* at 9-10, I would hold that this condition, as it now exists, is constitutionally permissible, too.

But I would also make clear that Winton retains his constitutional rights. I therefore respectfully concur.

Gordon McCloud, J.

Montoya-Lewis, J