**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

FILED
MARCH 15, 2022
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

# COURT OF APPEALS, DIVISION III, STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 37850-1-III |
| | ) | (consolidated with |
| Respondent, | ) | No. 38072-6-III) |
| | ) | |
| v. | ) | |
| | ) | |
| MECHEL N. FREDERICK, | ) | ORDER GRANTING |
| | ) | MOTION TO PUBLISH |
| Appellant. | ) | |
| In the Matter of the Personal Restraint of: | ) | |
| | ) | |
| MECHEL N. FREDERICK, | ) | |
| | ) | |
| Petitioner. | ) | |

THE COURT has considered respondent's motion to publish the court's opinion filed on February 15, 2022, and the response thereto, and is of the opinion the motion to publish should be granted. Therefore,

IT IS ORDERED the motion to publish is granted. The opinion filed by the court on February 15, 2022, shall be modified on page 1 to designate it is a published opinion and on page 26 by deletion of the following language:

> A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

PANEL:     Judges Lawrence-Berrey, Pennell, and Staab

FOR THE COURT:

_____
LAUREL SIDDOWAY
CHIEF JUDGE

**FILED**
**FEBRUARY 15, 2022**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 37850-1-III |
| | ) | (consolidated with |
| Respondent, | ) | No. 38072-6-III) |
| | ) | |
| v. | ) | |
| | ) | |
| MECHEL N. FREDERICK, | ) | |
| | ) | |
| Appellant. | ) | UNPUBLISHED OPINION |
| | ) | |
| In the Matter of the Personal Restraint of: | ) | |
| | ) | |
| MECHEL N. FREDERICK, | ) | |
| | ) | |
| Petitioner. | ) | |

LAWRENCE-BERREY, J. — In this consolidated appeal and personal restraint petition (PRP), Mechel Frederick challenges a number of community custody conditions imposed by the sentencing court and the Indeterminate Sentence Review Board (ISRB or Board). We accept the State's concession that the word "romantic" must be struck from condition 19 and otherwise affirm and dismiss Mr. Frederick's PRP.

FACTS

In July 2016, Mechel Frederick responded to an Internet Craigslist ad from a woman looking for someone to have sex with her underage children. Mr. Frederick was

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 37850-1-III; No. 38072-6-III
*State v. Frederick*; *PRP of Frederick*

under the influence of marijuana at the time.  He agreed to have sex with the woman's

11-year-old daughter and showed up with condoms and lubricants at what he thought

was the woman's residence.  The woman was an undercover detective.  Mr. Frederick

was arrested.  He later pleaded guilty to one count of attempted second degree rape of a

child.  The trial court sentenced Mr. Frederick to a "determinate plus" sentence under

RCW 9.94A.507 of a 58.5-month minimum term and a maximum term of life.

More than one year after sentencing, Mr. Frederick filed a motion under

CrR 7.8 challenging five conditions of his community custody.  The superior court

transferred the motion to this court for consideration as a PRP.  The State conceded,

and we agreed that the motion fit within the "facial invalidity" exception to

RCW 10.73.090(1) and was not time barred.  Clerk's Papers (CP) at 22.  We remanded to

the superior court for consideration of Mr. Frederick's challenges.

Of the five conditions originally challenged, only two are challenged on appeal.

We limit our discussion to those two conditions.

*Condition 18: Accessing social media*

Condition 18 originally read: "Do not access social media or dating websites

unless approved by [community corrections officer (CCO)] and/or Therapist."  CP at 50.

After considering the State's proposed modification and Mr. Frederick's objection, the

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 37850-1-III; No. 38072-6-III
*State v. Frederick*; *PRP of Frederick*

trial court modified condition 18 to read: "Do not access the [I]nternet and/or any social media for the purpose of engaging in sexual co[mm]unication or contact with any minor." CP at 23.

*Condition 19: Romantic/sexual relationships*

Condition 19 originally read: "Do not enter into a romantic/sexual relationship without prior approval of your CCO and/or Therapist." CP at 50. After considering the State's proposed modification and Mr. Frederick's objection, the trial court modified condition 19 to read: "Do not enter into a dating and/or a romantic/sexual relationship with an individual that is a parent or guardian to a minor child(ren) without first obtaining approval from your therapist and your Community Corrections Officer." CP at 23.

Mr. Frederick timely appealed modified conditions 18 and 19.

## ANALYSIS

CONDITION 18: ACCESSING SOCIAL MEDIA

Mr. Frederick contends the phrase "sexual communication" in condition 18 is unconstitutionally vague. We disagree.

We review community custody conditions for an abuse of discretion and will reverse if the condition is manifestly unreasonable. *State v. Hai Minh Nguyen*, 191

3

No. 37850-1-III; No. 38072-6-III
*State v. Frederick*; *PRP of Frederick*

Wn.2d 671, 678, 425 P.3d 847 (2018).  An unconstitutional condition is manifestly

unreasonable.  *Id.*

Under the Fourteenth Amendment to the United States Constitution and article I,

section 3 of the Washington Constitution, due process "requires that citizens have fair

warning of proscribed conduct."  *State v. Bahl*, 164 Wn.2d 739, 752, 193 P.3d 678

(2008).  A community custody condition that does not provide this warning is

unconstitutionally vague.  *Id.* at 752-53.

To comply with due process, a community custody provision must "'define the

criminal offense with sufficient definiteness that ordinary people can understand what

conduct is proscribed [and] provide ascertainable standards of guilt to protect against

arbitrary enforcement.'"  *Hai Minh Nguyen*, 191 Wn.2d at 678 (quoting *Bahl*, 164 Wn.2d

at 752-53).  When the prohibition concerns matters protected by the First Amendment, "a

stricter standard of definiteness applies."  *Bahl*, 164 Wn.2d at 753.

"A community custody condition 'is not unconstitutionally vague merely because a

person cannot predict with complete certainty the exact point at which his actions would

be classified as prohibited conduct.'"  *Hai Minh Nguyen*, 191 Wn.2d at 679 (quoting

*City of Seattle v. Eze*, 111 Wn.2d 22, 27, 759 P.2d 366 (1988)).  Rather, to be valid, a

condition must put a person of ordinary intelligence on notice of the behavior the

4

No. 37850-1-III; No. 38072-6-III
*State v. Frederick*; *PRP of Frederick*

condition prohibits. *Id.* Some possible areas of disagreement are permissible. *Id.* The condition is considered in "a commonsense fashion" in a context including "the judgment and sentence, and related documents that will be available to [a] future community corrections officer." *State v. Johnson*, 197 Wn.2d 740, 748, 487 P.3d 893 (2021).

Mr. Frederick analogizes the term "sexual communication" to "romantic relationship," a term that we have held to be unconstitutionally vague in the context of community custody conditions. *See State v. Peters*, 10 Wn. App. 2d 574, 591, 455 P.3d 141 (2019). Mr. Frederick's condition, however, has important differences that render it sufficiently definite.

First, "sexual communication" has a clear meaning when read in a commonsense fashion in the context of condition 18 in full, Mr. Frederick's other community custody conditions, his judgment and sentence, and related documents. Mr. Frederick was convicted of attempting to rape a child. He committed his offense by using the Internet to contact a person purportedly offering her child for commercial sex. Accordingly, the court imposed community custody condition 18, which prohibits accessing the Internet and social media "for the purpose of engaging in sexual co[mm]unication or contact with any minor." CP at 23.

No. 37850-1-III; No. 38072-6-III
*State v. Frederick*; *PRP of Frederick*

In condition 18, the word "sexual" modifies both "communication" and "contact." Applying the normal rules of grammar, "sexual" must have the same meaning in both contexts. *See Estate of Telfer v. Bd. of County Comm'rs*, 71 Wn. App. 833, 836, 862 P.2d 637 (1993). And "sexual contact" has been defined by our legislature in the same chapter as Mr. Frederick's crime of conviction: "'Sexual contact' means any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party." RCW 9A.44.010(2). This accords with one of the dictionary definitions of "sexual:" "of or relating to the sphere of behavior associated with libidinal gratification." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2082 (1993). In the context of Mr. Frederick's crime of conviction and the method in which he committed the crime, a person of ordinary intelligence would understand that "sexual communication" refers to communication relating to or associated with the gratification of sexual desire.

Second, the condition specifically addresses communication between Mr. Frederick and a minor, which minimizes the risk of arbitrary enforcement. A wide range of potentially flirtatious communication might be acceptable between adults so that it may be difficult to distinguish between appropriate and inappropriate communications. But

6

No. 37850-1-III; No. 38072-6-III
*State v. Frederick*; *PRP of Frederick*

there is no acceptable range of flirtatious communication between a convicted child sex offender and a child.

For example, Mr. Frederick suggests that the condition is subject to arbitrary enforcement "because one officer could find the discussion of kissing as constituting sexual communication while another" might not. Br. of Appellant at 6. We disagree. Any community corrections officer of ordinary intelligence would consider a "discussion of kissing" between a convicted child sex offender and a child a sexual communication, i.e., communication intended to gratify the offender's sexual desire. There is no such thing as innocent flirtatious banter between a convicted child sex offender and a child. We conclude that the challenged condition is not unconstitutionally vague.

CONDITION 19: ROMANTIC RELATIONSHIPS

Mr. Frederick contends the limitation on "romantic/sexual relationship[s]" in condition 19 is unconstitutionally vague. The State concedes vagueness.

As noted above, "romantic relationship" is unconstitutionally vague. *See Peters*, 10 Wn. App. 2d at 591. The State concedes this and requests that we direct the trial court to strike the word "romantic." We accept the State's concession and remand for the trial court to strike the word "romantic" in condition 19.

No. 37850-1-III; No. 38072-6-III
*State v. Frederick*; *PRP of Frederick*

PRP SUPPLEMENTAL FACTS

The Board ordered Mr. Frederick to be released on August 26, 2020, but cancelled his release after he refused to sign the conditions of release. Mr. Frederick's refusal was due to his belief that signing the conditions would result in his forfeiting any right to challenge them. At a hearing on February 25, 2021, the Board informed Mr. Frederick that he could challenge the conditions through a PRP even after signing that he agreed to abide by them.

The Board released Mr. Frederick on April 14, 2021. Before his release, Mr. Frederick filed this PRP challenging five conditions of community custody. As a result, the Board altered two of the five challenged conditions. We address Mr. Frederick's five challenged conditions below.

PRP ANALYSIS

In a PRP, the petitioner must show he is restrained under RAP 16.4(b) and that the restraint is unlawful under RAP 16.4(c). *In re Pers. Restraint of Grantham*, 168 Wn.2d 204, 212-13, 227 P.3d 285 (2010).

A petitioner is under a "restraint" if he has limited freedom because of a court decision in a criminal case or is "under some other disability resulting from a judgment or sentence in a criminal case." RAP 16.4(b). A person subject to conditions imposed by

8

No. 37850-1-III; No. 38072-6-III
*State v. Frederick*; *PRP of Frederick*

the Board is restrained within the meaning of RAP 16.4(b). *See In re Pers. Restraint of*

*Winton*, 196 Wn.2d 270, 274-75, 474 P.3d 532 (2020).

The restraint is unlawful if "[t]he conditions or manner of the restraint of petitioner

are in violation of the Constitution of the United States or the Constitution or laws of the

State of Washington." RAP 16.4(c)(6). The petitioner bears the burden of proving, by a

preponderance of the evidence, that his restraint is unlawful. *In re Pers. Restraint of*

*Cook*, 114 Wn.2d 802, 814, 792 P.2d 506 (1990). Board release conditions are reviewed

for an abuse of discretion. *Winton*, 196 Wn.2d at 274.

The parties disagree on the scope of the Board's authority to impose release

conditions, referred to as conditions of community custody. We begin by setting forth the

Board's statutory authority to impose such conditions.

Before releasing an offender, the Department of Corrections conducts an

examination of the defendant that includes a prediction of the probability that the

offender will engage in additional sex offenses if released. RCW 9.95.420(1)(a). The

Department then sends the results of its end of sentence review to the Board, including its

recommendations for additional or modified conditions of community custody.

RCW 9.95.420(3)(a). Once this information is received, and no later than 90 days before

the expiration of the offender's minimum sentence, the Board conducts a hearing. *Id.*

9

No. 37850-1-III; No. 38072-6-III
*State v. Frederick*; *PRP of Frederick*

At the hearing, the Board determines whether it is more likely than not the offender will engage in sex offenses if released on conditions it sets. *Id.* If it determines the offender will not engage in such offenses, the Board orders the offender released on conditions it determines are appropriate. Otherwise, the Board imposes a new minimum sentence. *Id.*

"Offenders released under RCW 9.95.420 are subject to crime-related prohibitions and affirmative conditions established by the court, the department of corrections, or the board. . . ." RCW 9.95.064(2).[1] The Board "may not impose conditions that are contrary to those ordered by the court" or "contravene or decrease court-imposed conditions." RCW 9.94A.704(6).

RCW 9.95.420(2) directs the Board to impose the conditions provided for in RCW 9.94A.704. By virtue of this, the Board is authorized (1) to impose certain crime-related prohibitions against persons convicted of sex offenses (*see* RCW 9.94A.704(5)), (2) to impose affirmative conditions, such as rehabilitative programs (*see* RCW 9.94A.704(4)), and (3) to impose conditions that are reasonably related to the crime of conviction, the offender's risk of reoffending, or the safety of the community (*see*

---

[1] We agree with the State's assessment that the *Winton* court did not seek to define the Board's full authority to impose release conditions; rather, it focused only on crime-related prohibitions. 196 Wn.2d at 276 n.5.

No. 37850-1-III; No. 38072-6-III
*State v. Frederick*; *PRP of Frederick*

RCW 9.94A.704(10)(c)(i)-(iii)).  Finally, RCW 9.95.420(2) authorizes the Board to

impose conditions in addition to those recommended by the Department.

> PRP ISSUE I:  CONDITION C: DRUG MONITORING
>
> Condition C, as later modified by the Board, provides:
>
> > You must submit to periodic and random drug monitoring through an
> > agency approved by your CCO and sign a full release of information
> > allowing the treatment or monitoring agency to release information to your
> > CCO.

Resp't's Resp. to PRP, Ex. 1, Attach. H (Order of Release and Conditions (July 8,

2021)), at 1.  This condition supplements condition A, which prohibits the use of

illegal substances, drugs, narcotics, or controlled substances.

Mr. Frederick argues the condition requiring drug monitoring is not crime related

and exceeds the authority of the Board.  We disagree.

Mr. Frederick's presentence investigation report includes his statement of the

offense.  He explained that he was online looking to meet people using Craigslist when he

read a post from "taboo mommy" and responded to it.  He did not understand her line of

questioning.  He later got high smoking marijuana, and "[t]hings went downhill from

there and I made a bad moral decision that resulted in my arrest."  Resp't's Resp. to PRP,

Ex. 1, Attach C (Presentence Investigation Report), at 3.

11

No. 37850-1-III; No. 38072-6-III
*State v. Frederick*; *PRP of Frederick*

A "crime-related prohibition" means an order prohibiting conduct that directly relates to the circumstances of the crime for which the offender was convicted, including affirmative acts necessary to monitor compliance with the order. RCW 9.94A.030(10). Mr. Frederick's use of a mind-altering substance lowered his inhibitions and caused him to make the bad decision resulting in his arrest. Thus, monitoring compliance with the prohibition of drug use is crime related.

As explained above, the Board's authority to impose conditions of community custody is not limited to conditions that are crime related. It extends also to conditions that are reasonably related to the offender's risk of reoffending.

PRP ISSUE II: CONDITION F: INTERNET MONITORING

Mr. Frederick argues condition F, requiring Internet monitoring, is not crime related and conflicts with United State Supreme Court precedent. We disagree.

Condition F reads in full:

You must not access the [I]nternet without first meeting with your CCO and fully and accurately completing the "Social Media and Electronic Device Monitoring Agreement" DOC Form # 11-080. You must install a monitoring program, at your own expense, and your CCO must be your designated accountability partner. The requirements and prohibitions on this completed form will remain in effect until removed or modified in writing, signed and dated by you and your CCO.

12

No. 37850-1-III; No. 38072-6-III
*State v. Frederick*; *PRP of Frederick*

Resp't's Resp. to PRP, Ex. 1, Attach. F (Order of Release and Supervision

Conditions (Apr. 14, 2021)), at 2.

*Crime related*

The condition in question is crime related. Mr. Frederick facilitated his crime

through the Internet, responding to an online posting offering sex with a child. A

limitation on his Internet use is therefore a prohibition related to the circumstances of his

crime.

*Not unconstitutionally overbroad*

Mr. Frederick argues the community custody condition at issue is

unconstitutionally overbroad. We disagree.

A condition of community custody that places limitations on a fundamental right is

permissible, provided that it is sensitively imposed. *Johnson*, 197 Wn.2d at 744.

Restrictions on Internet access have both due process and First Amendment implications.

*Id.* Although a condition of community custody may restrict a convicted defendant's

access to the Internet, to avoid a First Amendment violation, the restriction must be

narrowly tailored to the dangers posed by the specific defendant. *Id.* at 744-45.

In *Johnson*, the defendant responded to a Craigslist ad. *Id.* at 742. Text messages

and e-mails showed that he agreed to have sex with a girl whom he believed to be 13

13

No. 37850-1-III; No. 38072-6-III
*State v. Frederick*; *PRP of Frederick*

years old. *Id.* They arranged to meet in a public place, and he was arrested. *Id.* A jury

found Johnson guilty of various child sex offenses, including attempted second degree

rape of a child. *Id.* at 742-43. As part of his sentence, the trial court required Johnson not

to use the Internet unless authorized by his community corrections officer through

approved filters. *Id.* at 744. The *Johnson* court held that the community custody

condition was not unconstitutionally overbroad because it was narrowly tailored to the

dangers posed by Johnson. *Id.* at 745-47.

Mr. Frederick relies on *Packingham v. North Carolina*, __ U.S. __, 137 S. Ct.

1730, 198 L. Ed. 2d 273 (2017). There, the United States Supreme Court held that a

condition that barred persons convicted of certain sex crimes from popular social media

sites, including Facebook and Twitter, was unconstitutionally overbroad. *Id.* at 1733,

1737.

In *Johnson*, our Supreme Court distinguished *Packingham* on the basis that the

restriction before it was "significantly narrower" than in *Packingham*. *Johnson*, 197

Wn.2d at 746. Similarly here, the restriction is significantly narrower than in

*Packingham*. Mr. Frederick can visit whatever sites he wishes but because he knows his

use is monitored, he will refrain from visiting sites that might suggest he is looking to

meet minors.

14

No. 37850-1-III; No. 38072-6-III
*State v. Frederick*; *PRP of Frederick*

The circumstances leading to Johnson's arrest and conviction are similar to those leading to Mr. Frederick's arrest and conviction. Similar to *Johnson*, we conclude that the condition on Internet use requiring monitoring is not unconstitutionally overbroad because it is narrowly tailored to the dangers imposed by Mr. Frederick.

PRP ISSUE III: CONDITION E: SEXUALLY EXPLICIT MATERIAL

Mr. Frederick argues that condition E's limitation is unconstitutionally vague and exceeds the authority of the Board. We disagree.

Condition E reads in full:

You must not possess or access sexually explicit materials. Sexually explicit materials consist of any item reasonably deemed to be intended for sexual gratification and which displays, portrays, depicts, or describes: a) Nudity, which includes, but is not limited to, exposed/visible (in whole or part, including under or through translucent/thin materials providing intimate physical detail) genitals/genitalia, anus, buttocks and/or female/transgender breast nipple(s); b) A sex act which includes, but is not limited to, genital-genital, oral-genital, anal-genital, or oral-anal contact/penetration, genital or anal contact/penetration with an inanimate object, masturbation and/or bodily excretory behavior; c) Sadistic/masochistic abuse, bondage, bestiality, and/or participant who appears to be non-consenting, dominated, degraded, humiliated, or in a submissive role, and/or a participant who appears to be acting in a forceful, threatening, dominating, or violent manner; and/or d) A minor, or a model or cartoon depicting a minor, in a sexually suggestive setting/pose/attire.

Resp't's Resp. to PRP, Ex. 1, Attach. F (Order of Release and Supervision Conditions (Apr. 14, 2021)), at 2.

15

No. 37850-1-III; No. 38072-6-III
*State v. Frederick*; *PRP of Frederick*

Our Supreme Court has already spoken directly on this issue in the context of community custody conditions: "the term 'sexually explicit material' is not unconstitutionally vague." *Hai Minh Nguyen*, 191 Wn.2d at 681. The inclusion in condition E of more specific examples does not change this calculus; a clarifying list of prohibited material further limits any vagueness, and the list "need not be *exclusive* (i.e., exhaustive) to survive a vagueness challenge." *State v. Wallmuller*, 194 Wn.2d 234, 243, 449 P.3d 619 (2019) (citing *State v. Johnson*, 4 Wn. App. 2d 352, 360, 421 P.3d 969 (2018)).

Additionally, the Board's inclusion of a list of examples more extensive than related statutory definitions does not make the condition vague. As the court noted in *Hai Minh Nguyen*, statutory definitions served only to "bolster[ ] the conclusion that 'sexually explicit material' is not an unconstitutionally vague term." 191 Wn.2d at 680. A person of ordinary intelligence can understand the meaning of the term independent of related statutory definitions.

Contrary to Mr. Frederick's assertion that the condition is open to arbitrary enforcement by his community corrections officer, the word "reasonably" creates an objective standard for enforcement of condition E. *See*, *e.g.*, *In re Keenan*, No. 201,996-0, slip op. at 10 (Wash. Feb. 10, 2022), https://www.courts.wa.gov/opinions/pdf/2019960.pdf;

16

No. 37850-1-III; No. 38072-6-III
*State v. Frederick*; *PRP of Frederick*

*Allstate Ins. Co. v. Peasley*, 131 Wn.2d 420, 430, 932 P.2d 1244 (1997) ("[T]he use of 'reasonably' implies a removed observer, looking at the facts from a neutral, 'reasonable' perspective."). A term is unconstitutionally vague only if it "invites an inordinate amount of discretion." *State v. Myles*, 127 Wn.2d 807, 812, 903 P.2d 979 (1995). Condition E limits Mr. Frederick's community corrections officer's discretion regarding enforcement to only that material that a neutral, removed observer would consider sexually explicit. This is not an inordinate amount of discretion and is not unconstitutionally vague.

Mr. Frederick conjures up a number of innocuous images he argues the condition may nonetheless exclude, such as women in bathing suits in a sunscreen advertisement. His hypotheticals, however, rely on an incomplete reading of condition E. The condition defines sexually explicit material as material "reasonably deemed to be intended for sexual gratification *and which* displays, portrays, depicts, or describes [various content]." Resp't's Resp. to PRP, Ex. 1, Attach. F (Order of Release and Supervision Conditions (Apr. 14, 2021)), at 2 (emphasis added). Thus, while a woman in a bathing suit may be covered by the description of content in the second part of the condition (e.g., "thin materials providing intimate physical detail"), it would not be prohibited because no reasonable observer would consider a sunscreen advertisement featuring a woman in a bathing suit as material intended for sexual gratification. And again, it is a reasonable

17

No. 37850-1-III; No. 38072-6-III
*State v. Frederick*; *PRP of Frederick*

person's viewpoint we must take.  It is irrelevant that a particularly puritanical person might consider any image of a woman in a bathing suit as intended for sexual gratification; condition E requires a broad societal agreement regarding such material. As the court in *Hai Minh Nguyen* noted, "persons of ordinary intelligence can discern 'sexually explicit material' from works of art and anthropological significance."  191 Wn.2d at 680-81.

Mr. Frederick further argues the condition exceeds the authority of the Board, pointing to the absence of a similar condition imposed by the sentencing court.  He contends the condition is not crime related because his crime was unconnected to any sexually explicit material.  As discussed above, the Board has authority independent of the sentencing court to impose conditions of community custody, so it is not meaningful that the sentencing court did not impose a similar condition.  And again, *Hai Minh Nguyen* forecloses the argument the condition is not crime related.  In holding that a prohibition on sexually explicit material was reasonably related to Nguyen's crimes of child rape and molestation, the court observed:

> Nguyen committed sex crimes and, in doing so, established his inability to control his sexual urges.  It is both logical and reasonable to conclude that a convicted person who cannot suppress sexual urges should be prohibited from accessing "sexually explicit materials," the only purpose of which is to invoke sexual stimulation.

18

No. 37850-1-III; No. 38072-6-III
*State v. Frederick*; *PRP of Frederick*

191 Wn.2d at 686. By attempting to rape a child, Mr. Frederick similarly established he cannot control his sexual urges. As the sentencing court did in *Hai Minh Nguyen*, the Board appears "to believe that [sexually explicit] materials may trigger the defendant to reoffend or, perhaps, commit another sex crime." *Id.* at 685. This is "a sufficient connection between the prohibition and the crime of conviction," and we will not disturb the Board's decision to impose the condition. *Id.* at 685-86.

Accordingly, the Board did not abuse its discretion by imposing condition E.

PRP ISSUE IV: CONDITION G: DATING AND SEXUAL RELATIONSHIPS

Mr. Frederick argues condition G is unconstitutionally vague and infringes on his freedom of association and privilege against self-incrimination. We disagree.

Condition G originally read in full:

> You must not engage in a romantic or dating or sexual relationship without your CCO's prior permission. You must disclose your status as a sex offender and the nature of your offending to include unadjudicated victims, to anyone with whom you intend to begin such a relationship. The disclosure must be verified by the CCO.

Resp't's Resp. to PRP, Ex. 1, Attach. F (Order of Release and Supervision Conditions (Apr. 14, 2021)), at 2.

On June 28, 2021, the Board modified the condition to read:

19

No. 37850-1-III; No. 38072-6-III
*State v. Frederick*; *PRP of Frederick*

> You may not engage in a dating or sexual relationship(s) with any person
> who has custody of minor aged child(ren), unless approved by the CCO and
> the ISRB. All dating and sexual relationships require prior CCO
> verification that the person is aware of your sexual offense history.

Resp't's Resp. to PRP, Ex. 1, Attach. G (Order of Release and Conditions, Addendum 1

(June 28, 2021)), at 1.

The Board argues we should not review Mr. Frederick's challenge because the

Board has replaced condition G, and Mr. Frederick is no longer restrained by the former

condition. Mr. Frederick is still restrained by current condition G, however, and so we

review his challenges in the context of the current condition.

Mr. Frederick first argues condition G is unconstitutionally vague and attempts to

circumvent the sentencing court by prohibiting Mr. Frederick from entering into romantic

relationships. While this was true of former condition G, the current condition removes

the reference to romantic relationships and restricts only Mr. Frederick's dating or sexual

relationships. This cures the vagueness and any conflict with court-imposed conditions.

*See Peters*, 10 Wn. App. 2d at 590-91.

Mr. Frederick next argues that the condition is overbroad because it infringes on

his First Amendment right to association without a legitimate state interest. He argues

that since his crime involved children, the State has no interest in restricting his

relationships with adults. We disagree.

20

No. 37850-1-III; No. 38072-6-III
*State v. Frederick*; *PRP of Frederick*

The First Amendment protects a person's freedom of association, including intimate association. *Roberts v. United States Jaycees*, 468 U.S. 609, 617-18, 104 S. Ct. 3244, 82 L. Ed. 2d 462 (1984); *State v. Warren*, 165 Wn.2d 17, 34, 195 P.3d 940 (2008). This right may be limited "sensitively . . . 'if reasonably necessary to accomplish the essential needs of the state and public order.'" *State v. Riley*, 121 Wn.2d 22, 37-38, 846 P.2d 1365 (1993) (quoting *Malone v. United States*, 502 F.2d 554, 556 (9th Cir. 1974)).

We recently addressed a condition similar to Mr. Frederick's in *State v. Geyer*, 19 Wn. App. 2d 321, 496 P.3d 322 (2021). Like Mr. Frederick, the defendant was charged with attempted rape of a child after being arrested in a sting operation in which he contacted an undercover detective who was posing as a mother and arranged to have sexual contact with her fictitious daughter. *Id.* at 324. The trial court imposed community custody conditions prohibiting the defendant from entering into or remaining in a relationship and having contact with children without permission from his community corrections officer and sexual deviancy treatment provider. *Id.* at 327. The defendant was married with three children; the conditions made no exception for these existing relationships. *Id.*

The defendant argued, and the State conceded, that the condition impermissibly burdened his constitutional rights pertaining to family and association. *Id.* We accepted

21

No. 37850-1-III; No. 38072-6-III
*State v. Frederick*; *PRP of Frederick*

the concession, noting that under the facts of the case, the condition was broader than

necessary to further the State's "compelling interest in preventing harm to children." *Id.*

at 328. The defendant had preexisting intimate relationships with his wife and children,

and they had no role in his offense. *Id.* As applied to the defendant, the condition was

overbroad. *Id.* We instructed that the conditions be amended to allow the defendant to

have contact with his wife and children without the restrictions; the defendant did not

challenge the broader restrictions on minors other than his children and intimate partners

other than his wife, which we left in place. *Id.*

Mr. Frederick does not have the same countervailing interests supporting his right

to intimate association. Our analysis in *Geyer* explicitly turned on "the particular facts"

of the case. *Id.* Mr. Frederick, however, does not point to an existing sexual or dating

relationship that is being infringed on by condition G. His right to form new intimate

relationships is infringed, but only to the extent necessary to further the State's interest in

protecting children. By his own account of events, Mr. Frederick was attempting to form

a sexual relationship with the fictitious woman he contacted when he instead arranged

and attempted to have sex with her fictitious daughter. Forming a new sexual or dating

relationship with a person with minor children is therefore closely connected to the

circumstances of Mr. Frederick's crime. The Board removed a previous limitation that

22

No. 37850-1-III; No. 38072-6-III
*State v. Frederick*; *PRP of Frederick*

applied to relationships with persons without minor children; the condition now limits

Mr. Frederick's association only with that class of person with whom he facilitated his

crime. This is a sensitive, reasonably necessary limitation and is not overbroad.

Mr. Frederick finally argues that condition G encroaches on his Fifth Amendment

protections. We disagree.

Former condition G required Mr. Frederick to inform potential partners of his

crimes, including his unadjudicated victims, potentially violating Mr. Frederick's

protections against self-incrimination. Current condition G removes the reference to

unadjudicated victims, requiring only that a partner be informed of Mr. Frederick's sexual

offense history. The condition no longer requires Mr. Frederick to disclose potentially

incriminating information and no longer implicates his Fifth Amendment rights.

The Board's revision of condition G cured any constitutional infirmity and the

current condition is not an abuse of discretion.

PRP ISSUE V: CONDITION I: OVERNIGHT VISITS

Mr. Frederick argues the word "residence" in condition I makes it

unconstitutionally vague. We disagree.

Condition I reads in full: "You must not remain overnight in a residence

where minor children live or are spending the night without prior approval from

23

No. 37850-1-III; No. 38072-6-III
*State v. Frederick*; *PRP of Frederick*

your CCO and the ISRB." Resp't's Resp. to PRP, Ex. 1, Attach. F (Order of Release and Supervision Conditions (Apr. 14, 2021)), at 2.

Mr. Frederick's argument in large part relies on his assertion that "residence" in Board-imposed condition I is unconstitutionally vague, like the term "premises." We disagree. "Residence" does not have the same meaning as "premises," so even if "premises" was unconstitutionally vague, it still would not follow that "residence" is.

A person of ordinary intelligence understands the meaning of the word "residence." Indeed, that understanding is so clear that the legislature relied on it in RCW 9A.44.128(5), defining "fixed residence" in the context of sex offender registration to include buildings where a person "conduct[s] activities consistent with *the common understanding of residing*, such as sleeping; eating; keeping personal belongings; receiving mail; and paying utilities, rent, or mortgage." (Emphasis added.)

Consistent with this common understanding, Washington courts have recognized the term "residence" is not unconstitutionally vague in the sex offender registration statute: "'residence' has been sufficiently defined such that an ordinary person would understand the term to mean a place where a person intends to return to live as opposed to a place that he or she is just visiting." *State v. Breidt*, 187 Wn. App. 534, 540, 349 P.3d 924 (2015); *see also State v. Pickett*, 95 Wn. App. 475, 478, 975 P.2d 584 (1999).

24

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 37850-1-III; No. 38072-6-III
*State v. Frederick*; *PRP of Frederick*

As used in Mr. Frederick's condition I, "residence" is similarly clear. The condition itself indicates that a residence is a place where minor children might live. Read in context of Mr. Frederick's other conditions, judgment and sentence, and other related documents, *see Johnson*, 197 Wn.2d at 748, the condition is plainly directed toward restricting Mr. Frederick's access to minor children overnight when they are likely to be sleeping and unsupervised; thus, no person of ordinary intelligence would understand it to prohibit Mr. Frederick from staying the night alone in a hotel where children are staying in separate, locked rooms, or in a multi-unit apartment building. The condition is not unconstitutionally vague.

Mr. Frederick also challenges condition I as redundant because other conditions sufficiently restrict his contact with minor children. Given the particular vulnerability of sleeping children, however, a condition that limits Mr. Frederick's access to them is reasonably related to his risk of reoffending and the safety of the community and was within the Board's discretion to impose.

Condition I's limitation on overnight stays in residences with minor children is not unconstitutionally vague.

25

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 37850-1-III; No. 38072-6-III
*State v. Frederick*; *PRP of Frederick*

Affirm in part and reverse in part; dismiss petition.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____        _____
Pennell, C.J.                                            Staab, J.

26