**NOTICE:  SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
AUGUST 10, 2023

*González C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
AUGUST 10, 2023

ERIN L. LENNON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of | ) | No. 100753-1 |
| | ) | |
| PETER DANIEL ANSELL, | ) | EN BANC |
| | ) | |
| Respondent. | ) | Filed: <u>August 10, 2023</u> |
| | ) | |
| _____ | ) | |

MONTOYA-LEWIS, J.—Peter Ansell is serving an indeterminate life sentence in community custody. The Indeterminate Sentencing Review Board (ISRB) seeks reversal of a Court of Appeals decision invalidating certain community custody conditions. We conclude that the conditions relating to sexually explicit materials, dating, and relationships are not unconstitutionally vague. However, the ISRB exceeded its authority in imposing the cannabis condition, which it concedes is not related to Ansell's crimes. We therefore affirm in part and reverse in part.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Ansell is serving an indeterminate life sentence for multiple counts of child molestation. He and his wife were part of a babysitting group with two other families in his neighborhood. The parents took turns taking care of the children when the

*In re Pers. Restraint of Ansell*
No. 100753-1

other couples went out in the evenings.  Between 2006 and 2008, Ansell molested

the children of his friends and neighbors when he was in charge of babysitting the

children.  He pleaded guilty to three counts of child molestation.

Ansell received an indeterminate sentence of 130 months to life.  After he

served the minimum term of incarceration, the ISRB reviewed Ansell's file and, in

2020, found him eligible to serve the remainder of his sentence in community

custody.

As part of that review, the Department of Corrections referred Ansell for a

sexual deviancy evaluation and risk assessment.  Although there is no evidence that

the crimes involved any drugs, the evaluation inquired into Ansell's drug and alcohol

history.  He reported some drug experimentation and alcohol use in his youth and

infrequent use of alcohol and cannabis[1] in his adulthood.

The ISRB determined Ansell to be a low risk and releasable under RCW

9.95.420, subject to over two dozen conditions.  Ansell timely filed a personal

restraint petition (PRP) challenging eight of the community custody conditions.  The

Court of Appeals found the following five conditions invalid:

> B.      You must not enter the area of Seattle that is south of Hwy 523
>         and north of I[nterstate]-90, in between Lake Washington and the
>         Puget Sound/Elliott Bay, without prior written approval of your
>         [Community Corrections Officer] CCO and the ISRB. (See
>         attached map[.])

---

[1] We use the term "cannabis" except where quoting the record.  *See State v. Fraser*, 199
Wn.2d 465, 469 n.1, 509 P.3d 282 (2022).

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

. . . .

D.    You must not use, possess or control any Marijuana/THC or enter any establishments whose primary purpose is the sale of Marijuana/THC.

. . . .

G.    You must not possess or access sexually explicit materials. Sexually explicit materials consists of any item reasonably deemed to be intended for sexual gratification and which displays, portrays, depicts, or describes: a) Nudity, which includes, but is not limited to, exposed/visible (in whole or part, including under or through translucent/thin materials providing intimate physical detail) genitals/genitalia, anus, buttocks and/or female/transgender breast nipple(s); b) A sex act which includes, but is not limited to, genital-genital, oral-genital, anal-genital, or oral-anal contact/penetration, genital or anal contact/penetration with an inanimate object, masturbation and/or bodily excretory behavior; c) Sadistic/masochistic abuse, bondage, bestiality, and/or a participant who appears to be nonconsenting, dominated, degraded, humiliated, or in a submissive role, and/or a participant who appears to be acting in a forceful, threatening, dominating, or violent manner; and/or d) A minor, or a model or cartoon depicting a minor, in a sexually suggestive setting/pose/attire.

. . . .

N.    You must not date individuals who have minor children, unless you receive prior approval from your CCO <u>and</u> the ISRB.

O.    You must not form relationships with persons/families with minor children without first disclosing your sex offender status and having this relationship approved by your CCO.

Mot. for Discr. Rev., App. F at 2-3.

Accordingly, the Court of Appeals granted the PRP in part, dismissed it in part, and directed the ISRB to strike or revise several conditions. *In re Pers. Restraint of Ansell*, No. 82506-2-I, slip op. at 21 (Wash. Ct. App. Jan. 18, 2022) (unpublished), https://www.courts.wa.gov/opinions/pdf/825062.pdf. The court

*In re Pers. Restraint of Ansell*
No. 100753-1

found condition D (cannabis) unauthorized under *Winton*.[2]  *Id.* at 6.  It found

conditions G (sexually explicit materials), N (dating), and O (relationships)

unconstitutionally vague.  *Id.* at 11-13, 16-17.  It directed the ISRB to modify

condition B (travel) to develop standards for exceptions to travel through the

exclusion zone.  *Id.* at 21.

We granted the ISRB's motion for discretionary review regarding conditions

D, G, N, and O.  No party sought review regarding condition B (travel).  However,

the ISRB indicated that it had amended that condition, and Ansell subsequently filed

a motion for an injunction for this court to compel the ISRB to further revise

condition B.  For the reasons stated below, we now deny the motion for an

injunction, and we affirm in part and reverse in part.

ANALYSIS

I.     Motion for Injunction

We first address the request for injunctive relief.  This court has authority to

issue orders granting injunctive or other relief to a party "to insure effective and

equitable review."  RAP 8.3.  The purpose of that rule is to "preserve[] the status

quo" by "permit[ting] appellate courts to grant preliminary relief in aid of their

appellate jurisdiction so as to prevent destruction of the fruits of a successful appeal."

*Wash. Fed'n of State Emps., Council 28, AFL-CIO v. State*, 99 Wn.2d 878, 883, 665

---

[2] *In re Pers. Restraint of Winton*, 196 Wn.2d 270, 278, 474 P.3d 532 (2020).

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

P.2d 1337 (1983).

The Court of Appeals directed the ISRB to modify the travel restriction in condition B to "develop ascertainable standards applicable on a case-by-case basis to allow travel into and through the exclusion zone." *Ansell*, slip op. at 21. Following the Court of Appeals decision, the ISRB revised that condition to permit exceptions "for medical purposes only." Mot. for Inj. at 8. After we granted review regarding the other conditions, Ansell filed a motion for an injunction to compel the ISRB to further revise condition B to permit other exceptions.

This court may grant injunctive relief "to insure effective and equitable review." RAP 8.3. But Ansell has not shown that an injunction is necessary to ensure this court's effective and equitable review of the issues before us. When this court accepts review of a Court of Appeals decision, we review only the questions raised in the motion for discretionary review or answer. RAP 13.7(b). No party sought discretionary review regarding the travel restriction; that condition has not been raised before this court. Moreover, the nature of the challenge to condition B is distinct from the vagueness and statutory challenges to the other conditions before this court. An injunction regarding condition B would not aid our review of the issues that are properly before us. RAP 8.3. Nor is an injunction necessary to prevent destruction of the fruits of Ansell's successful challenge to condition B, *Wash. Fed'n of State Emps.*, 99 Wn.2d at 883, as our decision on the issues properly

5

*In re Pers. Restraint of Ansell*
No. 100753-1

before us has no bearing on condition B.

Accordingly, the motion for an injunction is denied. We next turn to the challenges to the community custody conditions properly before us.

II.      Community Custody Conditions

Under the Sentencing Reform Act of 1981 (SRA), a person convicted of a sex offense receives an indeterminate sentence with a minimum and maximum term. RCW 9.94A.507(3). These indeterminate sentences include community custody, which is required for any period of time between the release from total confinement and the expiration of the maximum sentence. RCW 9.94A.507(5). Release into community custody is subject to conditions, which may be imposed either by a court at sentencing or by the department or the ISRB upon finding the person releasable. RCW 9.94A.703, .704. This case involves community custody conditions imposed by the ISRB.

Before releasing the person into community custody, the department conducts an evaluation to predict the probability they will engage in additional sex offenses if released. RCW 9.95.420(1)(a). The ISRB will order the person released if it determines, based on the department's recommendations and the ISRB hearing, that they are unlikely to engage in sex offenses if released under certain conditions. RCW 9.95.420(3).

A person subject to such community custody conditions may raise a challenge

6

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

to the conditions through a PRP, where they must show that they are restrained and that the restraint is unlawful. RAP 16.4(a)-(c); *In re Pers. Restraint of Blackburn*, 168 Wn.2d 881, 883-84, 232 P.3d 1091 (2010). A person "who is transferred from total confinement to community custody remains under the continuing jurisdiction of the ISRB" and is under restraint for purposes of RAP 16.4(b). *In re Pers. Restraint of Winton*, 196 Wn.2d 270, 275, 474 P.3d 532 (2020). Restraint is unlawful if the conditions or manner of the restraint violates the constitution or a state law. RAP 16.4(c)(2); *In re Pers. Restraint of Williams*, 198 Wn.2d 342, 352, 496 P.3d 289 (2021).

Ansell argues that three community custody conditions are unconstitutionally vague and the other is not authorized by statute because it is not related to his crimes. Whether an entity has authority to impose certain community custody conditions under the SRA is a question of statutory interpretation, which we review de novo. *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007). When there is no question as to authority but rather a challenge that the entity erred in imposing a condition, we review the condition for abuse of discretion and will invalidate conditions "if they are manifestly unreasonable." *State v. Hai Minh Nguyen*, 191 Wn.2d 671, 678, 425 P.3d 847 (2018) (citing *State v. Bahl*, 164 Wn.2d 739, 753, 193 P.3d 678 (2008)). Imposition of an unconstitutional condition is manifestly unreasonable. *State v. Padilla*, 190 Wn.2d 672, 677, 416 P.3d 712 (2018); *Bahl*, 164

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Wn.2d at 753.

We conclude the conditions relating to sexually explicit materials, dating, and relationships are not unconstitutionally vague, and we therefore reverse the Court of Appeals with respect to those conditions. However, we conclude the cannabis condition is not within the ISRB's authority to impose under these circumstances, and we therefore affirm with respect to that condition.

A.     Vagueness

Due process under both the state and federal constitutions requires that citizens have fair warning of proscribed conduct. *Bahl*, 164 Wn.2d at 752 (citing *City of Spokane v. Douglass*, 115 Wn.2d 171, 178, 795 P.2d 693 (1990)). "A legal prohibition, such as a community custody condition, is unconstitutionally vague if (1) it does not sufficiently define the proscribed conduct so an ordinary person can understand the prohibition or (2) it does not provide sufficiently ascertainable standards to protect against arbitrary enforcement." *Padilla*, 190 Wn.2d at 677 (citing *Bahl*, 164 Wn.2d at 752-53).

When deciding a vagueness challenge, "the terms are not considered in a 'vacuum,' rather, they are considered in the context in which they are used." *Bahl*, 164 Wn.2d at 754 (quoting *Douglass*, 115 Wn.2d at 180). A condition that contains a definition may be unconstitutionally vague if the definition itself is vague or overbroad. *Padilla*, 190 Wn.2d at 674-75. If the term is not defined, we "may

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Ansell*
No. 100753-1

consider the plain and ordinary meaning as set forth in a standard dictionary." *Bahl*, 164 Wn.2d at 754.

The vagueness doctrine does not demand community custody conditions to be drafted with such precision that a person is able to "'predict with complete certainty the exact point at which [their] actions would be classified as prohibited conduct.'" *Padilla*, 190 Wn.3d at 677 (internal quotation marks omitted) (quoting *State v. Sanchez Valencia*, 169 Wn.2d 782, 793, 239 P.3d 1059 (2010)); *see also Douglass*, 115 Wn.2d at 179 ("This test . . . does not demand impossible standards of specificity or absolute agreement."). Instead, "[i]f persons of ordinary intelligence can understand what the [condition] proscribes, notwithstanding some possible areas of disagreement, the [condition] is sufficiently definite." *Douglass*, 115 Wn.2d at 179. A "stricter standard of definiteness" applies when a community custody condition implicates First Amendment rights. *Nguyen*, 191 Wn.2d at 679 (citing *Bahl*, 164 Wn.2d at 753); U.S. CONST. amend. I.

For the reasons stated below, we agree with the ISRB that the three conditions challenged for vagueness here are sufficiently definite to pass constitutional muster. Thus, the ISRB did not abuse its discretion in imposing those conditions; we reverse the Court of Appeals as to conditions G, N, and O.

### 1.     *Possession or Access to Sexually Explicit Materials*

First, condition G prohibits Ansell from "possess[ing] or access[ing] sexually

9

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

explicit materials" and includes a definition that "[s]exually explicit materials consists of any item reasonably deemed to be intended for sexual gratification and which displays, portrays, depicts, or describes" various listed sex acts, scenarios, or nudity. Mot. for Discr. Rev., App. F at 2. Ansell argues the definition of sexually explicit materials is overly broad—particularly the definition of nudity to include "intimate physical detail" that is "exposed/visible (in whole or part, including under or through translucent/thin materials. . .)." *Id.* The ISRB argues the definition of sexually explicit materials is sufficiently limited by the requirement the depiction be "reasonably deemed to be intended for sexual gratification." *Id.*

The condition is not unconstitutionally vague. We have previously upheld prohibitions on "sexually explicit materials" against vagueness challenges when an ordinary person would be able to understand the prohibition in context and with the aid of dictionary and statutory definitions. *See Nguyen*, 191 Wn.2d at 680-81; *Bahl*, 164 Wn.2d at 743, 756 ("'[b]ecause of the inherent vagueness of language, citizens may need to utilize other statutes and court rulings to clarify the meaning of a statute'—'[s]uch sources are considered presumptively available to all citizens'" (alterations in original) (internal quotation marks omitted) (quoting *State v. Watson*, 160 Wn.2d 1, 8, 154 P.3d 909 (2007))).

Here, the condition includes a definition of "sexually explicit materials," listing specific acts, images, and scenarios, qualified by the requirement that the

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Ansell*
No. 100753-1

depiction must be "reasonably deemed to be intended for sexual gratification." Mot. for Discr. Rev., App. F at 2. In *Nguyen*, we held that a condition prohibiting "'sexually explicit material as defined by RCW 9.68.130'" was not unconstitutionally vague because "persons of ordinary intelligence can discern 'sexually explicit material' from works of art and anthropological significance," which the referenced statute excluded. 191 Wn.2d at 679-81 (quoting the record). Similarly, here, reading the definition in context, a person of ordinary intelligence can understand that it does not prohibit all nude images but, rather, only those depictions "reasonably deemed to be intended for sexual gratification." Mot. for Discr. Rev., App. F at 2. Contrary to Ansell's contention, an ordinary person would understand that portrayals of sexual scenes in films like *Titanic* or *Love and Basketball* are not prohibited under this condition. Similarly, portrayals of nudity, such as in Frida Kahlo's *Two Nudes in the Forest*, Michelangelo's *David*, or a drawing of the human anatomy in a medical textbook are not prohibited. *See Nguyen*, 191 Wn.2d at 680-81 (discerning works of art from sexually explicit material). An ordinary person would understand the intended purpose of those images is not for sexual gratification. *See id.*

Ansell also argues that the phrase "reasonably deemed to be intended for sexual gratification" invites arbitrary enforcement subject to the personal interests of the individual CCO. Mot. for Discr. Rev., App. F at 2. But the condition does

11

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

not prohibit material a CCO personally finds sexually gratifying; it prohibits material that is *reasonably deemed intended* for that purpose. We generally interpret the term "reasonable" to denote an objective, rather than a subjective, standard. *See, e.g.*, *In re Disciplinary Proceeding Against Keenan*, 199 Wn.2d 87, 96, 502 P.3d 1271 (2022) (canons of judicial conduct); *In re Pers. Restraint of Garcia-Mendoza*, 196 Wn.2d 836, 844, 479 P.3d 674 (2021) (ineffective assistance of counsel); *State v. Escalante*, 195 Wn.2d 526, 533-34, 461 P.3d 1183 (2020) (custody for purposes of a *Miranda* warning). Thus, this condition includes a sufficiently ascertainable standard, based on whether a reasonable objective person would consider the image or depiction intended for sexual gratification.

We conclude that condition G adequately defines the proscribed conduct so an ordinary person can understand the prohibition and provides sufficiently ascertainable standards to protect against arbitrary enforcement. As is often the case in vagueness challenges, Ansell wants us to find that the absence of a precise definition equates to a vague definition. That cannot be the correct conclusion—we can fairly describe and define the prohibited materials in a thorough and objective manner, as the ISRB did here, and know that the prohibition can be appropriately communicated to the person subject to the restriction. The prohibition on sexually explicit materials is not unconstitutionally vague, and the ISRB did not abuse its discretion in imposing this condition. *See Padilla*, 190 Wn.2d at 677.

*In re Pers. Restraint of Ansell*
No. 100753-1

### 2. Dating

Second, condition N states, "You must not date individuals who have minor children, unless you receive prior approval from your CCO <u>and</u> the ISRB." Mot. for Discr. Rev., App. F at 3. As this condition does not contain definitions, we "may consider the plain and ordinary meaning as set forth in a standard dictionary." *Bahl*, 164 Wn.2d at 754. "Date" means "an appointment between two persons" "for the mutual enjoyment of some form of social activity" or "an occasion (as an evening) of social activity arranged in advance between two persons." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 576 (2002).

In *Nguyen*, we upheld a similar prohibition against any "dating relationship," looking to the plain and ordinary meaning according to the dictionary as well as a statutory definition and concluding that "a person of ordinary intelligence can distinguish a 'dating relationship' from other types of relationships." 191 Wn.2d at 682. Likewise, we conclude an ordinary person could understand that condition N prohibits social and romantic meetings with people who have minor children without prior approval.[3]

Ansell emphasizes that in the 21st century, the question of whether people are

---

[3] The ISRB points to *State v. Kinzle*, where the Court of Appeals upheld a similar condition because the crime involved children Kinzle accessed "through a social relationship with their parents." 181 Wn. App. 774, 785, 326 P.3d 870 (2014). But the *Kinzle* court did not analyze that condition for vagueness; it found the condition reasonably crime related and necessary to protect the public. *Id. Kinzle* is unpersuasive as to the vagueness analysis of Ansell's condition N.

13

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

considered dating can be rife with uncertainty if, for example, they meet for conversation over coffee or have a one-time sexual encounter. But the question is not whether a pair of people would agree to the label of "dating"; rather, the question is whether the proscribed conduct is sufficiently definite and objectively ascertainable. Based on the plain and ordinary meaning, a person of ordinary intelligence would understand that both of the aforementioned activities would be prohibited if the other person had minor children and Ansell failed to obtain prior approval. Further, this provides an objective standard, not a subjective one. Thus, the proscribed conduct is sufficiently definite. *Bahl*, 164 Wn.2d at 752-53.

We conclude the prohibition on dating is not unconstitutionally vague and the ISRB did not abuse its discretion in imposing condition N. *See Padilla*, 190 Wn.2d at 677.

### 3. Forming Relationships

Third, condition O states, "You must not form relationships with persons/families with minor children without first disclosing your sex offender status and having this relationship approved by your CCO." Mot. for Discr. Rev., App. F at 3.

Ansell argues this condition lacks guidance on the types of relationships it prohibits. But when deciding a vagueness challenge, "the terms are not considered in a 'vacuum,' rather, they are considered in the context in which they are used."

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Bahl*, 164 Wn.2d at 754 (quoting *Douglass*, 115 Wn.2d at 180). Community custody conditions should be "read in a commonsense fashion in the context of the judgment and sentence, and related documents that will be available to [the CCO]." *State v. Johnson*, 197 Wn.2d 740, 748, 487 P.3d 893 (2021). Here, Ansell's judgment and sentence shows that he was convicted of three counts of child molestation, and the release decision describes how Ansell committed the offenses against children in his family's babysitting group—the children of friends and neighbors. Additionally, condition N prohibits Ansell from dating people who have children, and an unchallenged condition I also prohibits Ansell from having contact with minors without the permission *and* supervision of a chaperone. *Cf. State v. Wallmuller*, 194 Wn.2d 234, 245, 449 P.3d 619 (2019) (reading a community custody condition in the context of other conditions). Condition O must be read in the context of the underlying criminal conduct and documents available to the CCO—which together indicate that the condition relates to preventing Ansell from accessing children based on his relationship with their parents, as he did with the children he molested. *Bahl*, 164 Wn.2d at 754; *Johnson*, 197 Wn.2d at 748 & n.3. Thus, read in context with the other community custody conditions and release decision, condition O provides sufficient standards to prevent arbitrary enforcement. *Johnson*, 197 Wn.2d at 748.[4]

---

[4] The concurrence/dissent expresses concern about reliance on extrinsic documents that might not be available to the defendant, *see* concurrence/dissent (Gordon McCloud, J.) at 7, but

15

*In re Pers. Restraint of Ansell*
No. 100753-1

Ansell also argues that condition O lacks guidance on the degree of friendliness in an interaction that amounts to a "relationship." Due process does not require that he should be able to "'predict with complete certainty the exact point at which his actions would be classified as prohibited conduct,'" as long as a person of ordinary intelligence can understand what is proscribed. *Padilla*, 190 Wn.2d at 677 (internal quotation marks omitted) (quoting *Sanchez Valencia*, 169 Wn.2d at 793); *Douglass*, 115 Wn.2d at 179 ("'vagueness in the constitutional sense is not mere uncertainty'" (quoting *State v. Smith*, 111 Wn.2d 1, 10, 759 P.2d 372 (1988))). In context, an ordinary person could understand that condition O is aimed at preventing easy access to children, which is a possibility in any relationship. Context shows that the condition prohibits Ansell from accessing children through friendly relationships, business relationships, neighborly relationships, and the like.

Condition O, though broad, is not unconstitutionally vague. An ordinary person would understand that when Ansell has friendly dealings with people who have minor children, he must disclose his sex offender status and get the approval of his CCO. This condition allows for the easy differentiation between an inconsequential conversation in a grocery store checkout line and a lengthier conversation between, for example, two parents whose children share a teacher and

we consider only the release decision and order of release stating the conditions—documents that are central to understanding the conditions and are readily available to the parties here.

16

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

who are planning a birthday party. One such conversation leads to nothing further, while the other involves children and begins the formation of a friendly relationship. Ansell fails to demonstrate that the term is unconstitutionally vague. Therefore, the ISRB did not abuse its discretion in imposing this condition. *See Padilla*, 190 Wn.2d at 677.

B.      Conditions Unrelated to the Crime

Last, Ansell challenged condition D, which prohibits the use of cannabis. The ISRB concedes that there is no evidence that Ansell's crimes involved any drugs. However, the ISRB argues community custody conditions need not be related to the crime of conviction as long as they meet a single one of the other statutory requirements. We disagree.

The scope of the ISRB's authority to impose community custody conditions is a question of statutory interpretation we review de novo. *Armendariz*, 160 Wn.2d at 110. The objective of statutory interpretation is to ascertain and implement the legislature's intent. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). If the statute's meaning is plain on its face, then we must give effect to that meaning as an expression of legislative intent. *Id.* at 9-10. Plain meaning is discerned from both the text of the statute, the statutory scheme as a whole, and related statutes. *Id.* at 11. If the statute is ambiguous, we may resort to aids to construction. *Id.* at 12.

17

*In re Pers. Restraint of Ansell*
No. 100753-1

The ISRB contends that RCW 9.94A.704 clearly outlines its authority to set community custody conditions, but that is not quite an accurate characterization of the law. Ansell committed these crimes between 2006 and 2008, so his sentence is governed by the version of the law in effect at that time: former RCW 9.94A.713(5) (2001) (LAWS OF 2001, 2d Spec. Sess., ch. 12, § 304). RCW 9.94A.345; *State v. Medina*, 180 Wn.2d 282, 287, 324 P.3d 682 (2014). Since then, the statute has been recodified as RCW 9.94A.704. LAWS OF 2008, ch. 231, §§ 57-59; LAWS OF 2009, ch. 28, § 12.

Rather than declaring affirmative parameters for the ISRB's authority to impose conditions, former RCW 9.94A.713(5) outlines an administrative process for the person subject to community custody conditions to object to a condition imposed by the department or ISRB. Conditions will be stricken if they are not reasonably related to any of three criteria:

> By the close of the next business day, after receiving notice of a condition imposed by the board or the department, an offender may request an administrative hearing under rules adopted by the board. The condition shall remain in effect unless the hearing examiner finds that it is *not reasonably related to any of the following*:
> > (a) The crime of conviction;
> > (b) The offender's risk of reoffending; or
> > (c) The safety of the community.

Former RCW 9.94A.713(5) (emphasis added).[5]

---

[5] The legislature has revised the statute several times in the decade and a half since Ansell committed these crimes, including a 2019 amendment adding "[t]he offender's risk of domestic violence reoffense" as another basis for a challenge to conditions imposed by the ISRB under

18

*In re Pers. Restraint of Ansell*
No. 100753-1

The ISRB argues that former RCW 9.94A.713(5) authorizes imposing a community custody condition that reasonably relates to any one of those matters, but the condition does not need to relate to all of them. It concedes that the cannabis condition does not relate to Ansell's crimes, but it argues a condition is valid nevertheless if it relates to the risk of reoffending or the safety of the community. Ansell argues, and we agree, that the statute requires that ISRB-imposed community custody conditions relate to all three topics.

The statute is ambiguous. Former RCW 9.94A.713(5) does not state that the ISRB can impose any condition as long as it relates to a single criterion. Rather, it outlines the grounds for a person to challenge a condition and states in the negative that the condition will remain in effect unless it is *not reasonably related to any of three topics*. *Id.* The ISRB argues the dictionary definition of the word "any," in the phrase "any of the following," supports its interpretation that the condition need relate to only one of the enumerated topics. But the word "any" can mean "one" or "all." WEBSTER'S, *supra*, at 97 ("Any" means "one, some, or all indiscriminately of

---

RCW 9.94A.704(10)(c). LAWS OF 2019, ch. 263, § 601. However, as explained above, the SRA declares that the law applicable to Ansell is that which was in effect at the time of the offenses. RCW 9.94A.345. Therefore, we agree with the concurrence that the current iteration of the statute is not at issue in this case, *see* concurrence (Whitener, J.) at 6, and therefore our analysis has no application to it. Our analysis applies to the version of the statute at issue in this case: former RCW 9.94A.713(5).

19

*In re Pers. Restraint of Ansell*
No. 100753-1

whatever quantity").[6]     Thus, the operative sentence can be read to mean that a condition is valid if it relates to any *one* of the enumerated topics or it can be read to mean that a condition is valid if it relates to *all* of those topics.  More precisely, it means that a person has the right to challenge a condition and have it stricken either (a) if it is not related to *one* of those topics or (b) if it is unrelated to *all* of those topics.

The more natural reading of the statute is that the person subject to the condition may challenge it on the basis that it does not relate to all three topics.  Thus, the ISRB is authorized to impose community custody conditions that relate to the crime of conviction, the risk of reoffense, and the safety of the community—but if the condition fails to relate to all three topics, it will be stricken.  Former RCW 9.94A.713(5) (the challenged condition will not remain in effect if "the hearing examiner finds that it is not reasonably related to any of the following" criteria).

This reading of the statute comports with the structure and purpose of the statutory scheme governing community custody, which aims to reduce the risk the person will commit another sex offense if released into the community.  *See* RCW 9.95.420(3); *see also Campbell & Gwinn*, 146 Wn.2d at 11.  Reading the statutory scheme as a whole, the risk of reoffending and the safety of the community are

---

[6] For example, "I can't find any stamps" means I can't find even a *single* stamp, while "give me any letters you find" means give me *all* the letters you find.  *See* WEBSTER'S, *supra*, at 97.

20

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Ansell*
No. 100753-1

inextricably linked to the crime of conviction—that is, the risk of reoffending refers to the risk the person will commit another similar sex offense, and the safety to the community refers to protecting the public against *that* risk. Former RCW 9.94A.713(5). The ISRB's concession that the cannabis prohibition does not relate to *any* of those purposes demonstrates this principle—no evidence suggests that cannabis relates to Ansell's crime or that restricting his access to cannabis relates to his risk of reoffense or the safety of the community. The ISRB does not have unfettered discretion to impose conditions untethered to these risks. Thus, the ISRB is authorized to impose community custody conditions that are reasonably related to the crime of conviction, the risk of reoffense, and the safety of the community—*a condition that fails to relate to all three topics is invalid*. *Id.*

We said as much in *Winton*. 196 Wn.2d at 278 ("Based on the statutory authority, the relevant inquiry is whether the imposed condition is 'crime-related,' meaning it is reasonably related to the crime, the offender's risk of reoffense, and the protection of public safety" (citing RCW 9.94A.704(10)(c)(i)-(iii); RCW 9.95.0001(2))). That case involved a challenge to a travel restriction in a community custody condition. *Id.* at 273. We held that conditions restricting the constitutional right to travel are reviewed for reasonableness, and the condition at issue was a reasonable exercise of authority because it was "reasonably related to the crime, recidivism, *and* public safety." *Id.* at 276, 279 (emphasis added). We explained:

*In re Pers. Restraint of Ansell*
No. 100753-1

> The condition complies with the statutory requirements; that is, it bears a reasonable relation to the crime, the risk of reoffense, *and* public safety. The condition directly relates to the crime because Winton's victims reside, work, and attend school within Clark County. *It also reasonably reduces the risk of reoffense, ensures public safety, and, notably, protects the victims and their families by preventing contact with Winton.* The ISRB properly exercised its discretion in imposing this condition.

*Id.* at 278-79 (emphasis added).

Given the text of the statute, along with the structure and purpose of the statutory scheme and our precedent, we conclude the SRA authorizes the ISRB to impose community custody conditions only if they relate to the crime of conviction, the risk of reoffense, *and* the safety of the community. Former RCW 9.94A.713(5). No evidence suggests the cannabis condition is related to Ansell's crimes, so the ISRB acted outside its authority in imposing condition D. We affirm the Court of Appeals with respect to condition D.

## CONCLUSION

The ISRB's authority to impose community custody conditions is broad, but not unlimited. It cannot impose conditions that are unconstitutionally vague, and it must adhere to the purpose of community custody under the SRA, which aims to reduce the risk a person will commit another sex offense if released into the community. In this case, conditions G, N, and O are not unconstitutionally vague; the ISRB did not abuse its discretion in imposing those conditions. However, the ISRB lacked authority to impose condition D, which is not related to the crime of

22

*In re Pers. Restraint of Ansell*
No. 100753-1

conviction, risk of reoffending, and the safety of the community, as required by

former RCW 9.94A.713(5).  We therefore affirm in part, reverse in part, and remand

for further proceedings consistent with this opinion.

Montoya-Lewis, J.

WE CONCUR:

González, C.J.

Johnson, J.

Owens, J.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 100753-1


WHITENER, J. (concurring)—In his personal restraint petition Peter Ansell

challenges many community custody conditions that the Indeterminate Sentencing

Review Board (ISRB) imposed on him.

I agree with the lead opinion that Ansell's motion for injunctive relief be

denied and, therefore, I join in Section I. I also agree with the lead opinion that the

conditions related to sexually explicit materials, dating, and forming relationships

are not unconstitutionally vague and, therefore, I join in Section II, subsection A.

However, I disagree that the ISRB exceeds its authority under former RCW

9.94A.713(5) (2001) when it imposes a community custody condition that is not

crime related, so long as the condition is reasonably related to another of the

enumerated criteria. Accordingly, I disagree with the lead opinion's analysis as to

condition D, prohibiting the use, possession, and control of cannabis.[1] However,

because the ISRB conceded at oral argument[2] that the cannabis condition is not

---

[1] Like the lead opinion, I also use the term "cannabis" instead of "marijuana." Lead opinion at 2 (citing *State v. Fraser*, 199 Wn.2d 465, 469 n.1, 509 P.3d 282 (2022)).

[2] At oral argument, in response to a question from Justice Montoya-Lewis as to how the cannabis condition related to one or all of the enumerated criteria, counsel for the ISRB stated that "in Mr. Ansell's case it does not seem to meet … any of the three or any of the four criteria" and conveyed that that is why the ISRB had withdrawn the condition prior to argument. Wash. Sup.

1

*In re Personal Restraint of Ansell*, No. 100753-1
Whitener, J. (concurring)

related to any of the three enumerated criteria, I would hold that the ISRB did exceed

its authority in imposing the cannabis condition and it must be stricken, but I would

affirm the Court of Appeals on this issue on different grounds.

Therefore, I respectfully concur.

ANALYSIS

Although we review community custody conditions for abuse of discretion,

we review whether an entity had the authority to impose such restrictions de novo

as it involves an issue of statutory interpretation. *In re Pers. Restraint of Winton*, 196

Wn.2d 270, 474 P.3d 532 (2020); *State v. Armendariz*, 160 Wn.2d 106, 110, 156

P.3d 201 (2007). When interpreting a statute, our "fundamental objective is to

ascertain and carry out the Legislature's intent, and if the statute's meaning is plain

on its face, then the court must give effect to that plain meaning as an expression of

legislative intent." *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-

10, 43 P.3d 4 (2002). We also consider the text of the provision in question, the

context of the statute in which the provision is found, related provisions, and the

statutory scheme as a whole. *City of Seattle v. Winebrenner*, 167 Wn.2d 451, 456,

219 P.3d 686 (2009).

---

Ct., oral argument, *In re Pers. Restraint of Ansell*, No. 100753-1 (Jan. 17, 2023) at 13 min., 21 sec., *audio recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Personal Restraint of Ansell*, No. 100753-1
Whitener, J. (concurring)

In the present case, condition D prohibits Ansell from using, possessing, or controlling cannabis and prohibits him from entering establishments that sell cannabis.

As the lead opinion explains, former RCW 9.94A.713(5) outlines the process under which a person subject to community custody conditions may object to conditions imposed by the ISRB. Lead opinion at 17. Former RCW 9.94A.713(5) reads,

> By the close of the next business day, after receiving notice of a condition imposed by the board or the department, an offender may request an administrative hearing under rules adopted by the board. The condition shall remain in effect unless the hearing examiner finds that it is *not reasonably related to any of the following*:
>
> (a) The crime of conviction;
>
> (b) The offender's risk of reoffending; *or*
>
> (c) The safety of the community . . .

(Emphasis added).

The lead opinion concludes that this statute is ambiguous. Lead opinion at 19. I disagree. A statute is "ambiguous" if, after analyzing the plain language, "the statute remains susceptible to more than one reasonable meaning." *Campbell & Gwinn*, 146 Wn.2d at 12. At this point, we can resort to statutory construction, including legislative history. *Id*.

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

The lead opinion itself recognizes that "'[a]ny' means 'one, some, or all indiscriminately of whatever quantity.'" Lead opinion at 19 (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 97 (2002)). Thus, "any" means one, some, or all, of the quantity of things under consideration.

Thus, placing this definition into the statute it now reads,

> By the close of the next business day, after receiving notice of a condition imposed by the board or the department, an offender may request an administrative hearing under rules adopted by the board. The condition shall remain in effect unless the hearing examiner finds that it is not reasonably related to [one, some, or all] of the following:
>
> (a) The crime of conviction;
>
> (b) The offender's risk of reoffending; or
>
> (c) The safety of the community.

Former RCW 9.94A.713(5). While the double negative of "unless" and "not reasonably related" is admittedly confusing, the statute says that the hearing examiner will strike the condition if it is not reasonably related to one, some, or all of the criteria. It follows that if the condition *is* reasonably related to one, some, or all of the criteria, then the condition shall remain in effect.

The lead opinion contends that "the operative sentence can be read to mean that a condition is valid if it relates to any *one* of the enumerated topics *or* it can be read to mean that a condition is valid if it relates to *all* of those topics." Lead opinion at 19 (second emphasis added). Although I agree that both of these statements are

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

ways in which the statute can be read, I disagree with the lead opinion's use of "or" because it is not that one or the other of these statements apply. Both of these statements apply and exist at once because there are three ways in which the community custody condition is valid: if one enumerated criterion is met, if two are met, *and* if all three are met. What the lead opinion deems to be "ambiguous" is that there are multiple ways in which the criteria of the statute can be met. This is not ambiguity. It is, instead, reasonable interpretations of the statute that can all exist at the same time because each alternative is a way to meet the criteria of the statute.

The lead opinion then asserts that reading a condition as valid if one criterion is met or if all are met "[m]ore precisely . . . means that a person has the right to challenge a condition and have it stricken either (a) if it is not related to *one* of those topics or (b) if it is unrelated to *all* of those topics." Lead opinion at 19-20. This is incorrect because it is based on the false premise that the condition is valid if one of the criteria is met *or* if all criteria are met, when instead the condition is valid if one criterion is met *and* also if all criteria are met (to include if *some* criteria are met). Further, under the scenario in which a person is challenging the condition for not being related to one of the criteria, if it is related to another of the two remaining criteria, then it would in fact be related to "one" of the criteria as required by the statute. The lead opinion is creating ambiguity where none exists.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

In addition, the colloquial understanding of this phrasing is that only one of the enumerated criteria must be met. Take the hypothetical of a job posting. If, similar to the statute, a job posting indicated that "applications will be considered unless we determine you do not meet any of the following criteria: five years of experience, graduation from college, and live within 10 miles of the job site." It would be reasonable for applicants to understand that their applications would be considered, so long as at least one of the criteria is met. Looking at this hypothetical another way, and removing the double negative, it reads that an application will be considered if someone *does* meet any (one, some, or all) of the criteria. While the phrasing could be clearer, there is no ambiguity. The same is true for the statute at issue.

Additionally, when interpreting a statute, the court must presume that the legislature did not intend unlikely or absurd results. *State v. Barbee*, 187 Wn.2d 375, 389, 386 P.3d 729 (2017). Although the current iteration of the statute is not at issue, the lead opinion's reading of the statute will lead to absurd consequences under the current statute. In 2019, the legislature added a fourth factor to the list in RCW 9.94A.704(10)(c),[3] which, in addition to crime of conviction, risk of reoffending,

---

[3] As the lead opinion correctly observes, the statute at issue in this case has been recodified as RCW 9.94A.704. Lead opinion at 18 (citing LAWS OF 2008, ch. 231, §§ 57-59; LAWS OF 2009, ch. 28, § 12).

6

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

and safety to the community, now includes "[t]he offender's risk of domestic violence reoffense." LAWS OF 2019, ch. 263, § 601(10)(c)(iv).

The other pertinent language has not changed. Therefore, under the lead opinion's reading of the statute, if one of those four factors is not met, then the hearing examiner must strike the condition. Accordingly, if a condition is not reasonably related to an offender's risk of domestic violence reoffense, the condition cannot be imposed. This eviscerates the authority of the ISRB. The ISRB will now be unable to impose *any* conditions on *any* offender who has not committed a domestic violence offense because there would be no condition that would prevent a "reoffense" of an offense that never happened in the first place. This would be absurd and cannot be the intention of the legislature.

In addition, former RCW 9.94A.713(1) reads,

> the department shall assess the offender's risk of recidivism and shall recommend to the board any additional or modified conditions of the offender's community custody based upon the risk to community safety. In addition, the department shall make a recommendation with regard to, and the board may require the offender to participate in, rehabilitative programs, or otherwise perform affirmative conduct, and obey all laws. The board must consider and may impose department-recommended conditions.

It would also be absurd to require the ISRB to consider and grant it the discretion to impose community custody conditions related only to the risk to community safety, only to have said conditions stricken under a later section of the same statute because the condition does not relate to the crime of conviction and risk of reoffense.

7

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

The lead opinion and Ansell contend that *Winton* is determinative, but I would hold that it is not determinative but rather is distinguishable. *Winton* did not consider the same type of community custody condition at issue here nor did *Winton* engage in a full statutory interpretation of the statute at issue in the present case.

In *Winton*, we examined a community custody condition that prohibited a parolee from entering Clark County without prior written approval. 196 Wn.2d at 273. The ISRB included this condition because Winton's victims lived in Clark County. *Id*. We held that this condition was reasonable under RCW 9.94A.704(10)(c), a successor statute to RCW 9.94A.713, noting that "[t]he condition complies with the statutory requirements; that is, it bears a reasonable relation to the crime, the risk of reoffense, and public safety." *Id*. at 278-79. The ISRB asserts that the *Winton* court incorrectly read the statute conjunctively because it implied that all factors must be met for a condition to be imposed. Pet'r's Suppl. Br. at 18. I agree. Therefore, I would clarify the interpretation of RCW 9.94A.704(10)(c) and hold that under the plain language of the statute, the enumerated requirements are disjunctive and only one must be met to impose a condition. *Id*. at 19.

It is true that in *Winton* this court did refer to the enumerated list of criteria as a conjunctive list adding in "and." *See, e.g.*, *Winton* 196 Wn.2d at 276 ("Moreover, an imposed condition must be reasonably related to the crime of the conviction, the

8

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

offender's risk of reoffending, *and* the safety of the community or it will be

removed." (emphasis added)). But the court did so only as it relates to "crime-

related" prohibitions, which was the focus in *Winton*.

As the *Winton* court correctly observed,

"'Community custody' means that portion of an offender's sentence subject to controls including crime-related prohibitions and affirmative conditions from the court, the board, or the department of corrections based on risk to community safety, that is served under supervision in the community, and which may be modified or revoked for violations of release conditions."

*Id.* (emphasis omitted) (quoting RCW 9.95.0001(2)). Looking at this language, the

ISRB can impose both crime-related and affirmative conditions. It follows these are

not the same or else there would be no reason to list both. Consistent with this, in a

footnote, the court recognized that "[b]ased on the language 'including crime-related

prohibitions and affirmative conditions,' we recognize that RCW 9.95.0001(2)

establishes nonexclusive considerations. However, in this case, our focus is on

'crime-related prohibitions,' and those additional considerations are not before us."

*Id.* at 276 n.5. Thus, the court recognized that it was not analyzing conditions that

were not crime-related prohibitions and recognized that there are other possible type

of conditions that were not before the court.

The court went on to define and analyze *crime-related prohibitions*. And for

*crime-related prohibitions*, concluded that conditions must be reasonably related to

the crime of conviction, the offender's risk of reoffending, and the safety of the

*In re Personal Restraint of Ansell*, No. 100753-1
Whitener, J. (concurring)

community. While this conclusion makes logical sense for crime-related prohibitions that are inextricably intertwined with all three enumerated criteria, the holding is also limited to crime-related prohibitions and does not apply to other affirmative conditions at issue in the present case.

As discussed above, when engaging in the statutory interpretation of the language in this statute, the conclusion made by the lead opinion that this is a conjunctive list is incorrect. Therefore, while in *Winton* all three of the enumerated criteria were met, the legal underpinnings requiring all three to be met are limited to the facts of a crime-related condition.

The Court of Appeals, Division Three, recently held that community custody conditions are not limited to conditions that are crime related and may be extended to "conditions that are reasonably related to the offender's risk of reoffending." *State v. Frederick*, 20 Wn. App. 2d 890, 903, 506 P.3d 690 (2022). Frederick argued that a condition that required drug monitoring was not crime related and could not be imposed. *Id*. at 902. The court found that the condition was crime related and further explained that "the [ISRB]'s authority to impose conditions of community custody is not limited to conditions that are crime related." *Id*. at 903. In doing so, the court "agree[d] with the State's assessment that the *Winton* court did not seek to define the [ISRB]'s full authority to impose release conditions; rather, it focused only on crime-related prohibitions." *Id*. at 902 n. 1. Although not binding, *Frederick* is persuasive

10

*In re Personal Restraint of Ansell*, No. 100753-1
Whitener, J. (concurring)

and supports a statutory interpretation that all conditions need not be related to the crime of conviction.

I would hold that the statute presents a disjunctive meaning in that at least one criterion must be satisfied, not all. The ISRB is within its authority to impose conditions not related to the crime if the condition is otherwise related to one of the enumerated criteria, as only one criterion on the list needs to be satisfied for a condition to remain in effect.

However, the ISRB has conceded that the cannabis condition is not related to any of the three enumerated criteria, therefore, I agree solely with the result of the lead opinion that the condition must be stricken.

CONCLUSION

I would reverse the Court of Appeals. Under the plain language of RCW 9.94A.713(5), only one of the enumerated criteria needs to be met for the condition to remain in effect. Accordingly, the ISRB has the authority to impose conditions unrelated to the crime but related to another enumerated criteria. However, here the ISRB conceded that the cannabis condition does not relate to any of the criteria, therefore, it must be stricken.

I respectfully concur.

*In re Personal Restraint of Ansell*, No. 100753-1
Whitener, J. (concurring)

Whitener, J.

Madsen, J.

Stephens, J.

Yu, J.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Ansell (Peter)*, No. 100753-1
(Gordon McCloud, J., concurring in part/dissenting in part)

No. 100753-1

GORDON McCLOUD, J. (concurring in part/dissenting in part)—
Community custody conditions must be related to the crime of conviction. And
the community custody conditions that the lead opinion upholds in this case are
certainly related to Peter Daniel Ansell's crimes of child molestation: he
accomplished the molestation by using his neighborhood babysitting group as a
source of victims and the Indeterminate Sentencing Review Board (ISRB) imposed
community custody conditions that obviously limit his ability to gain such
unsupervised access to children in the future.

The majority of those conditions achieve that goal with clear and definite
language. The condition barring Ansell from possessing or accessing "sexually
explicit materials" and then explaining what that term means is crime related and is
well defined. Mot. for Discr. Rev., App. F (Ord. of Release & Supervision
Conditions) at 2. And the condition barring Ansell from "dat[ing] individuals who
have minor children" absent "prior approval" is crime related and—given society's

1

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

general understanding of what "dating" means—is also narrow and therefore sufficiently clear. *Id.*, App. F at 3.

But condition O is different. It bars Ansell from "form[ing] relationships" with persons who have minor children absent prior community corrections officer (CCO) approval. *Id.* Unlike condition G, which contains a clear definition of its prohibition on "sexually explicit materials," *id.*, App. F at 2, condition O contains no definition at all of its prohibition on "relationships." And unlike condition N, which uses the narrow word "dating" to describe its bar on "dat[ing] individuals who have minor children" absent CCO approval, *id.*, App. F at 3, condition O uses the expansive word "relationships," without definition, to describe its bar on "form[ing] relationships" with persons who have minor children absent prior CCO approval. Even the lead opinion acknowledges that the word "relationships," unlike the word "dating," is "broad." Lead opinion at 16.

I therefore join the lead opinion in all respects, except for its decision about condition O. I would hold that because condition O lacks the clear and definite language contained in conditions N and G, it is unconstitutionally vague.

I therefore respectfully concur in part and dissent in part.

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Ansell (Peter)*, No. 100753-1
(Gordon McCloud, J., concurring in part/dissenting in part)

FACTS

As the lead opinion states, Ansell molested children left in his care as part of a neighborhood babysitting group. He pleaded guilty to three counts of child molestation. Ansell received an indeterminate sentence of 130 months to life.

After Ansell served his minimum term of 11 years, the ISRB released him subject to community custody conditions. One of those conditions, condition O, read:

> You must not form relationships with persons/families with minor children without first disclosing your sex offender status and having this relationship approved by your CCO.

Mot. for Discr. Rev., App. F at 3.

Ansell filed a personal restraint petition challenging condition O and other conditions, as the lead opinion explains. The Court of Appeals held, in part, that condition O was unconstitutionally vague and remanded with instructions for the ISRB to amend or strike the condition. *In re Pers. Restraint of Ansell*, No. 82506-2-I, slip op. at 17 (Wash. Ct. App. Jan. 18, 2022) (unpublished), https://www.courts.wa.gov/opinions/pdf/825062.pdf. This court granted review. Ord., *In re Pers. Restraint of Ansell*, No. 100753-1 (Wash. 2022).

3

*In re Pers. Restraint of Ansell (Peter)*, No. 100753-1
(Gordon McCloud, J., concurring in part/dissenting in part)

ANALYSIS

The due process clauses of the state and United States constitutions

"require[] that citizens have fair warning of proscribed conduct." *State v. Bahl*, 164

Wn.2d 739, 752, 193 P.3d 678 (2008) (citing *City of Spokane v. Douglass*, 115

Wn.2d 171, 178, 795 P.2d 693 (1990)); *Grayned v. City of Rockford*, 408 U.S. 104,

108, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972); WASH. CONST. art. I, § 3; U.S.

CONST. amend. XIV.

Thus, legal prohibitions like community custody conditions must be

sufficiently clear and cannot survive if they are unduly vague.

A community custody condition is unconstitutionally vague if it "(1) . . .

does not sufficiently define the proscribed conduct so an ordinary person can

understand the prohibition *or* (2) . . . does not provide sufficiently ascertainable

standards to protect against arbitrary enforcement." *State v. Padilla*, 190 Wn.2d

672, 677, 416 P.3d 712 (2018) (emphasis added) (citing *Bahl*, 164 Wn.2d at 752-

53). In other words, a condition must contain sufficiently definite and clear

descriptions of the prohibited conduct *and* the condition must contain clear

standards for uniform, nonarbitrary, enforcement.  A condition that lacks even one

of these constitutionally required minimum protections must be stricken as vague.

*Douglass*, 115 Wn.2d at 178.  Condition O's use of the key term "relationships,"

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

without a narrowing explanation or definition for either Ansell or his CCO, lacks

both of those constitutionally required minimum protections.

The lead opinion comes to a different conclusion. It does so by holding that

we should define the word "relationship," and narrow its otherwise massive scope,

by considering a variety of other documents that might be accessible to the CCO

even if they are not available to Ansell. As the lead opinion explains it, "Condition

O must be read in the context of the underlying criminal conduct and documents

available to the CCO—*which together indicate* that the condition *relates to*

*preventing Ansell from accessing children* based on his relationship with their

parents, as he did with the children he molested." Lead opinion at 15 (emphasis

added) (citing *Bahl*, 164 Wn.2d at 754; *State v. Johnson*, 197 Wn.2d 740, 748 &

n.3, 487 P.3d 893 (2021)).

This defeats both purposes of the vagueness doctrine.

The first key purpose of the vagueness doctrine in this context is to inform

the defendant, or probationer, or other supervisee, of the law's requirements with

sufficient definiteness for them to be able to understand what behavior is

prohibited. *Grayned*, 408 U.S. at 108; *see also Young v. Harper*, 520 U.S. 143,

150, 117 S. Ct. 1148, 137 L. Ed. 2d 270 (1997). Forcing the defendant to predict

the other documents on which the CCO might rely, concerning the goal of the

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

challenged condition rather than the meaning of the operative word used in that condition, to predict what "relationships" encompasses, thwarts that purpose. *Accord United States v. Guagliardo*, 278 F.3d 868, 872 (9th Cir. 2002) ("A probationer . . . has a separate due process right to conditions of supervised release that are sufficiently clear to inform him of what conduct will result in his being returned to prison." (citing *Grayned*, 408 U.S. at 108-09)); *Bahl*, 164 Wn.2d at 752 (due process clause "requires that citizens have fair warning of proscribed conduct").

The second key purpose of the vagueness doctrine in this context is to ensure that the person enforcing the condition—here, the CCO—cannot exercise discretion in an arbitrary manner. *Padilla*, 190 Wn.2d at 682. The lead opinion's reliance on unspecified documents concerning the goal of condition O, rather than clearly explaining the meaning of the word "relationships," also defeats that purpose.

I.  Controlling precedent requires conditions of supervision to be clear on their face. The lead opinion's decision to look to other documents available to the CCO to understand the purpose of condition O (but not its language) conflicts with that precedent

The lead opinion begins by reciting the two ways to test whether a community custody condition is unconstitutionally vague—whether it provides the defendant

6

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

with adequate notice and whether it is clear enough to prevent arbitrary enforcement. Lead opinion at 8 (quoting *Padilla*, 190 Wn.2d at 677). But the lead opinion does not apply those tests to the language of condition O. Instead, it applies those tests to other documents that are available to the CCO but that are absent from condition O (and absent from all the other conditions) and that are not even cross-referenced by those conditions. The lead opinion then concludes that those other documents—rather than the language of condition O itself—can adequately guide the CCO. But it does not explain how those other documents, which might not be available to the defendant can adequately guide that defendant.[1]

---

[1] The lead opinion states in a footnote that there is no cause for concern about a reviewing court's "reliance on extrinsic documents that might not be available to the defendant" because "we *only* consider the release decision and order of release stating the conditions." Lead opinion at 15 n.4 (emphasis added). I certainly agree with the footnote's advice about the limited number of documents that the court should consider. But the text of the lead opinion does not follow that advice. It actually relies on more than just the "release decision and order of release." It also relies on the "judgment and sentence" and the "*underlying criminal conduct and documents available to the CCO*" in order to conclude that condition O is not vague. Lead opinion at 14-15 (emphasis added) (citing *Johnson*, 197 Wn.2d at 748 & n.3). And, as discussed further below, the cited *Johnson* decision does not support looking at all those other documents to see if the defendant has fair notice. *Johnson* held that the court may examine extrinsic documents like the judgment and sentence and the "documents available to the CCO" when considering the *second* prong of the vagueness test, i.e., whether a condition is sufficiently clear to prevent arbitrary enforcement—not when considering the first prong of the vagueness test, i.e., whether a condition "'sufficiently define[s] the proscribed conduct so an ordinary person can understand the prohibition.'" Lead opinion at 8 (quoting *Padilla*, 190 Wn.2d at 677 (citing *Bahl*, 164 Wn.2d at 752-53)). In other words, despite the footnote, the lead opinion still seems to say that a condition provides sufficiently definite notice to the defendant even if the CCO has to look at unspecified

*In re Pers. Restraint of Ansell (Peter)*, No. 100753-1
(Gordon McCloud, J., concurring in part/dissenting in part)

The lead opinion does this by stating, first, that "when deciding a vagueness challenge, 'the terms are not considered in a "vacuum," rather, they are considered in the context in which they are used.'" Lead opinion at 14 (quoting *Bahl*, 164 Wn.2d at 754 (quoting *Douglass*, 115 Wn.2d at 180)). It then concludes—relying on one of our recent decisions—that community custody conditions should be "read in the context of the underlying criminal conduct and documents available to the CCO." *Id.* (citing *Johnson*, 197 Wn.2d at 748 & n.3).

In my view, the lead opinion's analysis conflates the two prongs of the vagueness test in a way that conflicts with the case on which the lead opinion places primary reliance: *Johnson*, 197 Wn.2d at 748. By conflating the two prongs of the vagueness test, the lead opinion's approach also conflicts with the controlling Supreme Court decisions that *Johnson* and our other vagueness cases implement. *See, e.g.*, *Grayned*, 408 U.S. at 108-09.

In *Johnson*, we considered whether a community custody condition stating that the defendant "shall 'not use or access the World Wide Web unless specifically authorized by [his CCO] through approved filters'" was vague and/or overbroad. 197 Wn.2d at 744. In analyzing the first prong of the vagueness test,

_____

extrinsic documents, not necessarily available to the defendant, to figure out what the condition means.

8

whether a defendant has sufficient notice of proscribed conduct, *Johnson* did not

discuss or examine extrinsic documents. *See id.* at 747-48. *Johnson* considered

only the language of the condition itself; *Johnson* determined that that language

gave fair notice of the prohibited conduct. *Id.* And the decisions on which *Johnson*

relies to analyze this first prong of the vagueness analysis did not look to extrinsic

documents available to the future CCO to determine whether a condition gave fair

notice, either. *Bahl*, 164 Wn.2d at 753; *State v. Hai Minh Nguyen*, 191 Wn.2d 671,

681, 425 P.3d 847 (2018); *State v. Wallmuller*, 194 Wn.2d 234, 449 P.3d 619

(2019) (reading community custody condition in context of that condition's

illustrative list of prohibited places and in context of other conditions); *see also*

*State v. Sanchez Valencia*, 169 Wn.2d 782, 794, 239 P.3d 1059 (2010) (examining

the plain language of a community custody condition to determine whether it

provided sufficient notice to the offender); *Young*, 520 U.S. at 150 (same, with

offender's conditional release document).

It is true that the *Johnson* court used a different, broader, analysis when it

addressed the *second* prong of the vagueness test. The *Johnson* court held that it

was proper to view the condition in the "context of the judgment and sentence, and

related documents that will be available to [the future CCO]" to figure out whether

there are "sufficient benchmarks *to prevent arbitrary enforcement*." 197 Wn.2d at

9

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

748. But the concern addressed by the second prong is different from the concern addressed by the first prong. The concern addressed by the second prong is whether a condition is clear enough to prevent arbitrary enforcement. In that context, it might make sense to consider documents that will be available to—and used by—the officer enforcing the condition.

But it does not make sense to consider extrinsic documents available to the CCO when considering whether a condition provides the *offender* with sufficient notice. In fact, considering extrinsic documents available to the CCO when considering whether a condition provides the *offender* with sufficient notice is inconsistent with *Johnson*'s analysis. It also conflicts, in principle, with direction given by the United States Supreme Court about how to decide whether the offender received sufficient notice. *Young*, 520 U.S. at 150; *Grayned*, 408 U.S. at 108 ("[W]e insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly.").

Although this court has said that ordinary people have access to statutory law and thus are presumptively aware of statutory definitions that might affect the meaning of a community custody condition, *see Bahl*, 164 Wn.2d at 756-57, we have never created any similar presumption regarding the access an ordinary person has to "related documents" that might be available to a CCO.

10

*In re Pers. Restraint of Ansell (Peter)*, No. 100753-1
(Gordon McCloud, J., concurring in part/dissenting in part)

And rightly so—because one of the key purposes of the vagueness doctrine is to protect a defendant's "right to conditions of supervised release that are sufficiently clear to inform him of what conduct will result in his being returned to prison." *Guagliardo*, 278 F.3d at 872. To require a defendant to predict and search out other, unincorporated documents to determine the meaning of words used in a community custody condition defies this purpose.

In my view, the lead opinion expands *Johnson* beyond its holding by concluding that it is appropriate to examine extrinsic documents when analyzing the first prong of the vagueness test. Because the first prong is concerned with whether the community custody condition provides sufficient notice to the defendant of proscribed conduct, this court's focus when examining that prong has been, and should remain, what the community custody order itself says.

I therefore disagree with the lead opinion's implied expansion of *Johnson* beyond its actual holding.[2]

---

[2] I disagree with the lead opinion's decision to look to extrinsic documents to determine whether Ansell's other community custody conditions provide sufficient notice of proscribed conduct. I agree with the lead opinion that the conditions it upholds are sufficiently definite, but for the reason that their plain language in the context of the community custody order itself is sufficiently clear and definite—without reference to other, unincorporated documents.

11

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

II.     Even if it were appropriate to look at extrinsic documents when applying both portions of the vagueness test, condition O would still be vague

The First Amendment protects the fundamental right to freedom of association. *State v. Frederick*, 20 Wn. App. 2d 890, 909, 506 P.3d 690 (2022); U.S. CONST. amend. I.  Condition O limits the people with whom Ansell can associate, so it burdens that right to freedom of association. *See id.*

Community custody conditions can certainly burden such fundamental rights. But conditions burdening such a fundamental right must be "'reasonably necessary to accomplish the essential needs of the state and public order.'" *State v. Riley*, 121 Wn.2d 22, 37-38, 846 P.2d 1365 (1993) (quoting *Malone v. United States*, 502 F.2d 554, 556 (9th Cir. 1974)). In addition, conditions that affect a fundamental right "demand[] a greater degree of specificity," *Padilla*, 190 Wn.2d at 678, and must meet "a stricter standard of definiteness." *Nguyen*, 191 Wn.2d at 679 (citing *Bahl*, 164 Wn.2d at 753); *see also State v. Warren*, 165 Wn.2d 17, 32, 195 P.3d 940 (2008). They must be imposed "sensitively." *Riley*, 121 Wn.2d at 37 (citing *United States v. Consuelo-Gonzalez*, 521 F.2d 259, 265 (9th Cir. 1975)). Specifically, "[m]ore careful review of sentencing conditions is required where those conditions interfere with a fundamental constitutional right." *Warren*, 165 Wn.2d at 32.

12

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

The reason for all these limits on supervision conditions that burden fundamental rights is clear: a vague prohibition "that encroaches on 'sensitive areas of basic First Amendment freedoms' naturally inhibits the exercise of those freedoms because individuals who are uncertain of the meaning of a statute will steer 'far wider' than necessary in order to ensure compliance." *Padilla*, 190 Wn.2d at 679 (quoting *Grayned*, 408 U.S. at 109 (internal quotation marks omitted)).

The lead opinion recites this stricter standard but fails to apply it. Applying this stricter standard shows that condition O is vague under both prongs of the vagueness test, even if we do look at the extrinsic documents mentioned by the lead opinion.

As to the first prong, even if the lead opinion is correct that it is appropriate to examine "'the judgment and sentence, and related documents that will be available to [the CCO]'" in order to determine whether the *offender* has sufficient notice of proscribed conduct, condition O is still vague. Lead opinion at 14-15 (quoting *Johnson*, 197 Wn.2d at 748). Condition O prohibits Ansell from "form[ing] relationships" with parents of minors without prior permission. But neither the condition itself nor those extrinsic documents define that term. Therefore, we look to dictionary definitions. *Bahl*, 164 Wn.2d at 754.

13

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

The relevant definition of the verb "to form" is "develop, acquire."

MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-

webster.com/dictionary/form#dictionary-entry-2 (last visited Aug. 3, 2023). The

common meaning of "relationship" is extremely broad—it is defined as "a state of

affairs existing between those having relations or dealings." *Id.*,

https://www.merriam-webster.com/dictionary/relationship (last visited Aug. 3,

2023). In common use, "relationship" can be used widely to encompass dealings

ranging from relatively minor—the friendly relationship one has with a store

cashier—to enormously significant—the relationship one has with family or close

friends. "Forming" a relationship is equally broad. An ordinary person would

understand "form[ing] relationships" as covering an enormously varied range of

human interaction and connection.

The lead opinion states that condition O as written permits "easy

differentiation" between interactions requiring prior CCO permission and conditions

not requiring CCO permission. Lead opinion at 16. I disagree. The extremely broad

variation in the types of human contact that can count as a "relationship" makes it

impossible for a person to determine what conduct is proscribed by condition O.[3]

---

[3] The lead opinion opines that the term is not vague because read in context,
condition O simply refers to "friendly dealings with people who have minor children."

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

For example, what about the development of friendly rapport with a regular at the coffee shop or the gym? What about chatting with a fellow dog park regular or mail delivery person?

Looking at other imposed conditions does not clarify the condition, either. Neither does looking at extrinsic related documents. For example, looking at the statement of probable cause shows the context in which Ansell committed the crimes. But that context still does not define "form relationships," so it does not to allow Ansell to figure out what interactions rise to the level of forming a relationship.

While the constitution does not require supervision conditions to enable a person to "'predict with complete certainty the exact point at which his actions would be classified as prohibited conduct,'" conditions must still provide more notice than this one does. *Nguyen*, 191 Wn.2d at 679 (quoting *City of Seattle v. Eze*, 111 Wn.2d 22, 27, 759 P.2d 366 (1988)), As Ansell argues, condition O's "lack of clarifying language does not even allow Ansell to predict what types of relationships need preapproval, let alone an exact point that a specific type crosses the line." Pers. Restraint Pet. at 20 (Wash. Ct. App. No. 82506-2-I (2021)).

---

Lead opinion at 16. But that's not what the condition says. And even if the condition did say that, the adjective "friendly" poses the same vagueness problems that "relationship" poses, because one can have "friendly dealings" with vast variations in intimacy and longevity.

15

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Condition O therefore flunks the first prong of the vagueness test. Because failing either part of the vagueness test makes a condition vague, we could end our inquiry here. *Douglass*, 115 Wn.2d at 178.

But if we did consider the second prong, whether the condition's language ensures nonarbitrary enforcement, condition O flunks that requirement, also. No matter how many extrinsic documents Ansell's CCO reads, that CCO will not find a definition of "form" or "relationships." The CCO's decision about what condition O permits is therefore virtually unconstrained. *Cf. Nguyen*, 191 Wn.2d at 682 (holding that "a person of ordinary intelligence can distinguish a 'dating relationship' from other types of relationships"). I would therefore hold that the condition fails the second prong of the vagueness test, too.

III.    If the condition is not vague, it is overbroad

The only way to save condition O, as written, from vagueness, is to interpret it as barring all friendly repeated contact with another parent. But if this is what condition O means, then it is overbroad and unconstitutional for that reason. Resp't Ansell's Suppl. Br. at 21. The lead opinion does not address Ansell's overbreadth argument.

As discussed above, a community custody condition can certainly limit a First Amendment right. But to do so, the condition must be sensitively imposed

16

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

and "narrowly tailored to the dangers posed by the specific defendant" to avoid overbreadth. *Johnson*, 197 Wn.2d at 744-45; *see also Grayned*, 408 U.S. at 114; *Packingham v. North Carolina*, 582 U.S. 98, 106, 137 S. Ct. 1730, 198 L. Ed. 2d 273 (2017).

The broader interpretation would violate that requirement. A blanket requirement that Ansell determine whether any person with whom he makes friendly contact has minor children, and that Ansell then obtain CCO approval before repeating the contact, is far from narrowly tailored. Ansell committed his serious offenses in a specific context: a neighborhood babysitting group. But requiring CCO permission before engaging in friendly human contact with any parents of minor children—even in contexts wholly dissimilar to babysitting groups, such as supermarkets, coffeeshops, and gyms—infringes on far more protected activity than necessary to ensure public safety. *See, e.g.*, *In re Pers. Restraint of Sickels*, 14 Wn. App. 2d 51, 73, 469 P.3d 322 (2020) (condition requiring CCO approval for *any* use of the Internet was overbroad, given defendant's specific sex crime conviction). Thus, even if we interpret condition O broadly to cure its vagueness problem, I would affirm the Court of Appeals on the ground that the condition is overbroad.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Ansell (Peter)*, No. 100753-1
(Gordon McCloud, J., concurring in part/dissenting in part)

CONCLUSION

Community custody conditions must provide sufficient notice of proscribed conduct to permit the supervisee—here, Ansell—to adjust his behavior accordingly. Community custody conditions burdening fundamental rights—here, the right to freedom of association—must also be tailored to the specific dangers that the supervisee poses. And community custody conditions must accomplish these goals on their face, without requiring research into other unspecified documents describing the underlying crime. In my view, condition O violates all of these constitutional requirements.

I therefore respectfully concur in part and dissent in part.

_____
Gordon McCloud, J.